## Stevens Estate

*Bruce L. Castor, H. Ober Hess* and *Ballard, Spahr, Andrews & Ingersoll,* for accountant.

*Marvin S. Baker* and *Ostroff, Lawler & Baker,* for claimant.

*Sydney J. Fires,* for Commonwealth.

KLEIN, P. J., December 6, 1962.—John Stevens, also known as John Stevins and Efstathios Mikailidis, died on April 2, 1944, leaving a will, dated July 10, 1937, which was admitted to probate on April 11, 1944, when letters testamentary were granted to Ethel M. Allison, decedent's landlady, with whom he lived for 25 years prior to his death.

The will, which is a short hand-drawn document, provides as follows:

"To whom it may concern:

"If I should die, it is my wish the Insurance be paid to Mrs. James Allison to settle my debts, etc., and if any money left—forward to my people.

/s/ John Stevens."

An account was filed by Mrs. Allison on August 22, 1947, which came on for audit before the present auditing judge on May 6, 1948. It appeared from the testimony taken at that time that decedent was a Greek, who had emigrated from Albania. It also appeared that he may have been survived by a wife and a daughter,

who resided in Albania, but no satisfactory proof of this fact was produced. The audit was therefore continued to enable the parties to obtain additional information concerning the alleged wife and daughter.

The executrix died on May 26, 1950, before the investigation was completed. On March 20, 1951, the court appointed Samuel Marx, Esq., trustee ad litem to review the account filed by the executrix "and to represent the parties in interest in said estate and to report his findings concerning said account and the assets of the estate."

The matter was listed for hearing again on March 8, 1951, at which time Mr. Marx's report was submitted to the court. He concluded that decedent "had a wife, Varvara, and a daughter, Agatha Nikolla Dusha, living in Peshton, Leckovik, Albania." An examination of the trustee's report discloses that the proofs upon which he relied were completely inadequate to support a finding of kinship by the court. He recommended, further, that an administrator d.b.n.c.t.a. be appointed who "should attempt to locate the daughter, Agatha, and her children or other persons legally entitled to the balance of the estate."

An adjudication was filed May 24, 1951, awarding the balance of the estate to an administrator d.b.n.c.t.a. when duly appointed and qualified.

The present account before us was filed by Sidney Chait, to whom letters of administration d.b.n.c.t.a. were issued by the register of wills on November 25, 1959. Proof of advertisement of notice thereof was produced to the auditing judge.

Marvin S. Baker, of the law firm of Ostroff, Lawler & Baker, entered an appearance for "Agathi Dusha, daughter and sole heir of the decedent and residuary beneficiary under the will of the decedent."

A report was submitted to the auditing judge by the accountant at the audit, in compliance with Phila-

delphia Orphans' Court Rules 69.4 and 69.5, in which he "suggests that the claimant be found to be the daughter of the decedent", and in the statement of proposed distribution he requests that the entire balance of principal and income be paid "to the State Treasury without escheat to be retained by the Commonwealth for the benefit of Agathi Dush and the personal representative of Varvara Kara, said payments to be without escheat pursuant to Section 737 of the Fiduciaries Act of 1949, as amended." Mr. Baker, at the audit, asked "that the report of the fiduciary be adopted and that the money be paid into the State Treasury under the Act of 1953 for the benefit of the daughter, the claimant, Agathi Dusha."

At the audit, Mr. Baker submitted the following documents for the record:

1. General power of attorney by Agathi Dusha;
2. Attestation of life by Agathi Dusha;
3. Certificate of death of Varvara Kara;
4. Certificate of birth of Agathi Dusha;
5. Certificate by Bishop of Korce as to marriage of decedent;
6. "Sentence" by The People's Court of Erseka, Albania, that Agathi Dusha is the only heir of decedent; and
7. Additional certificate of death of Varvara Kara.

Mr. Fires, on behalf of the Commonwealth of Pennsylvania, entered a general objection to the admission of all of the documents because they were not authenticated by a United States consul. He maintained that there is a failure of identification of the claimant and that the fund should be awarded to the Commonwealth without escheat.

Mr. Baker contends that, because the United States has no diplomatic relations with Albania, authentication through the French Charge d'Affairs, as was done in this case with all of the documents, except the

bishop's certificate as to the marriage, is the proper method to be followed.

The auditing judge is of the opinion that, with or without these documents, the award cannot be made as requested by the accountant or by Mr. Baker.

The law is settled beyond question that, in a contest to determine who shall take the property of a decedent who is alleged to have died without known relatives, the Commonwealth is the presumptive heir and has a circumstantial right thereto. The burden is upon those who claim kinship to establish their claim by a fair preponderance of trustworthy and satisfying evidence. To defeat the claim of the Commonwealth, the evidence in support of kinship must be so clear, precise and definite in quality and quantity as to satisfy the court of the existence of the relationship that is being claimed: Link's Estate (No. 1), 319 Pa. 513 (1935).

In the present case, claimant's proofs fall far short of the acceptable standards.

The only document in this record upon which any reliance can be placed is a copy of decedent's sworn declaration of intention for United States citizenship, to which his photograph is attached and which was found among his papers. Even this instrument, however, creates grave problems, because the information contained therein is confusing and in some respects obviously incorrect. For example, decedent said he was born on September 28, 1899, and arrived in New York on June 11, 1911, and that he had been married in Albania on September 15, 1908. He said that his wife's name was Valvera and that he had a daughter, Agatha, who was born on November 9, 1911. These statements would fix his age at nine years when he was married and 12 when his daughter was born. This is obviously incorrect. However, we can fairly conclude that decedent did have a wife, Valvera, and a daughter, Agatha, when he left Albania. It is also possible that claimant

is decedent's daughter, but we would not be warranted in reaching this conclusion in the light of the record before us.

Let us examine more closely claimant's proofs. The certificate of marriage, which she produced, stated that one *Stathaq Pano Kara* married Varvara Mihal Dino on September 5, 1904. Our decedent said his name was *Efstathios Mikailidis*. Even if all of the other information in the declaration of intention was erroneous, we certainly must assume that decedent knew his own name and it obviously was not Stathaq Pano Kara. Consequently, this certificate of marriage cannot be accepted as evidence of the marriage of our decedent. The birth certificate submitted by claimant indicates that she was born on July 7, 1912, and that her father's name was Stathaq. How can we accept this document as satisfactory evidence of paternity of a child of Efstathios Mikailidis, especially since the papers indicate she was born 13 months after he said he left Albania?

But even if the documents submitted by claimant were in proper order, and it is obvious that they are not, a further burden would be placed upon her to establish, by a fair preponderance of trustworthy and satisfying evidence, her identity as the individual she claims to be. This she has failed to do.

In Martinzik Estate, 25 D. & C. 2d 701 (1962), Judge Bolger, in a scholarly and comprehensive opinion, discussed at considerable length the law concerning the nature of the proof required of Russian nationals to support claims of kinship to Pennsylvania decedents. The dangers involved in accepting documents prepared by Soviet officials to establish the identity of Russian claimants are clearly pointed out by Judge Bolger. In our opinion, these risks are increased manifold when dealing with Albanian nationals. Albania is a tiny, impoverished agrarian country, completely controlled

by a small coterie of fanatical Communists. It is a satellite of Red China and has consistently displayed a hostile attitude towards the United States.

If Agathi Dusha, the claimant, were a resident of the Commonwealth of Pennsylvania, it is clear that we could not make a finding, upon the proofs here submitted, that she has satisfactorily established that she is a daughter of our decedent. Certainly, we would not be justified in giving more favorable consideration to the national of a hostile nation, with which we have broken diplomatic relations. On the contrary, a duty devolves upon American courts, when claimants live in communist-controlled countries, to make certain that every safeguard is taken and that the rules of evidence are scrupulously observed to prevent the proceeds of the estates of our decedents from being awarded to persons not legally entitled thereto.

The auditing judge has reached the conclusion, after a careful study of this record, that Agathi Dusha has failed to establish by sufficient satisfactory proofs that she is the daughter of John Stevens, also known as John Stevins and Efstathios Mikailidis, the decedent.

The balance of principal and income will be awarded, as requested by Mr. Fires, to the Commonwealth of Pennsylvania for payment into the State Treasury, without escheat, pursuant to section 1314 of the Fiscal Code of April 9, 1929, P. L. 343. The said award, however, will be made, without prejudice, to the rights of Agathi Dusha, in a future proceeding, to establish her claim that she is decedent's daughter and to prove her identity in accordance with the requirements of our law . . .

And now, December 6, 1962, the account is confirmed nisi.