## Malika Estate

*Marvin S. Baker* and *Ostroff, Lawler and Baker,* for exceptant.

*Herbert W. Salus, Jr., Special Assistant Attorney General,* contra.

KLEIN, P. J., November 22, 1963.—Anton Malika died in Philadelphia on March 9, 1943, intestate, unmarried and without issue. At the audit Catherin Kozlow, the administratrix, claimed to be decedent's first cousin. A claim was also presented in behalf of Philip Malika, also referred to as Filipp Leontievich Malika, a resident of Russia, who contends that he is decedent's brother and sole heir. The auditing judge concluded

that decedent had a brother, Philip Malika, who resided in Russia, but that sufficient proof had not been produced to establish that Philip Malika, who signed the power of attorney, which was offered for the record, was actually decedent's brother. He accordingly awarded the balance in the account, approximately $1,750, to the Commonwealth of Pennsylvania without escheat pursuant to section 1314 of the Fiscal Code of April 9, 1929, P. L. 343. The award was made "without prejudice to the rights of Philip Malika in the future proceeding to establish his claim that he is decedent's brother and to prove his identity in accordance with the requirements of our law."

Exceptions were filed by counsel for Philip Malika, who contend that the various documents, including the power of attorney, duly authenticated by the United States Consul, which were introduced by them for the claimant, established that he was the surviving brother and heir of decedent.

Since it is conceded that decedent did have a brother, Philip, the decisive question before us is whether the claimant had satisfactorily established his identity as such. He has, because of the circumstances, relied entirely upon documentary proof. Has he, by the production of these writings, met the burden which is placed upon him, under our decisions? We agree with the auditing judge that he has not.

Let us examine more closely the many documents produced by the claimant in support of his position.

The first is a power of attorney, dated August 31, 1956, executed by Malika Filipp Leontievich, residing in the village of Vasevichi, Diatlovsky rayon, Grodnenska oblast, appointing Isidor Ostroff, Esq., of the law firm of Ostroff, Baker and Lawler, Esqs., in the City of Philadelphia, Pa., as his attorney, with full power to take whatever steps are necessary to secure for him the proceeds of the estate of Anton Malika. In

this document, claimant alleges that he is "the heir/s at law, next of kin . . . of my brother Anton Malika." The seal of the American Consul in Moscow was affixed to the instrument, certifying that the Russian official, before whom the document was executed, was duly commissioned and qualified.

All questions with respect to the admissibility of this document have been laid to rest by Mr. Justice B. R. Jones, in an opinion filed October 9, 1963, in Bokey Estate, 412 Pa. 244 (1963). We will not repeat here what is set forth in detail in that opinion. It is sufficient for us to point out that the Supreme Court concluded that the power of attorney and the "survival" certificate were admissible, but that "their admissibility was limited to show that a person purporting to be the sister Flora appeared and executed the instant document but not to prove that the affiant was in fact the sister Flora or to show the present existence of the sister Flora." Thus, in the present case, the letter of attorney is admitted to show that Malika Filipp Leontievich, who claims to be decedent's brother, appeared and executed the document in question, but not to establish that he was in fact related to decedent.

In one of the affidavits filed by the claimant (Exhibit No. 5), dated February 22, 1962, he alleges that he was informed of Anton's death in 1955, and was advised by the Grodnenskaya Province Archives of the Bureau of Vital Statistics that the church records for the years 1875, 1876, 1882, 1890 and 1904 were not preserved and recommended that application be made to the People's Court "to issue a decree on the reconstruction of the original entries, which were lost" of the marriage and deaths of his parents, his birth and that of Anton Malika, decedent.

Acting upon this recommendation, claimant embarked on an extended program to recreate the lost records.

A certificate was offered by claimant from the Archives of the Bureau of Vital Statistics of the City of Grodno, Byelorussian Soviet Socialist Republic (Exhibit 10), duly authenticated by the United States Consul in Moscow, which attempts to validate the following five documents, each designated "Reconstructed Entry":

1. Certificate of Marriage of Leon Kazimirovich Malika and Anastasia Sinevich on July 10, 1875. This certificate is based upon an *entry made* in the Book of Records on *January 24, 1956,* and was *issued February 26, 1962.*

2. Certificate of Birth of Filipp Leontievich Malika, claimant, born May 1, 1876; Father, Leon Kazimirovich Malika; Mother, Anastasia Malika. This certificate is based upon an *entry made* in the Book of Records on *November 16, 1955,* and was *issued February 26, 1962.*

3. Certificate of Birth of Anton Leontievich Malika, presumably the decedent, born January 18, 1882; Father, Leon Kazimirovich Malika; Mother, Anastasia Malika. This certificate is based upon an *entry made* in the Book of Records on *January 18, 1956,* and was *issued February 26, 1962.*

4. Certificate of Death of Leon Kazimirovich Malika on May 10, 1904. This certificate is based upon an *entry made* in the Book of Records on *January 24, 1956,* and was *issued January 15, 1962.*

5. Certificate of Death of Anastasia Malika on January 24, 1890. This certificate is based upon an *entry made* in the Book of Records on *January 24, 1956,* and was *issued February 26, 1962.*

Objection is made by the Commonwealth to the admission of this exhibit in evidence on the ground that the entries certified to were made *post litem motam,* the certificates having been based on entries all made from 50 to 80 years after the happening of the

events which they purport to verify and at least 12 years after decedent's death in 1943.

Bouvier's Law Dictionary (Vol. 3) defines *post litem motam* as "after the commencement of the suit" and then continues:

"Declarations or acts of the parties made *post litem motam* are presumed to be made with reference to the suit then pending, and, for this reason, are not evidence in favor of the persons making them; while those made before an action has been commenced, in some cases, as when a pedigree is to be proved, may be considered as evidence; 4 Camp. 401."

Does the same rule apply to the admission of public records? Apparently little has been written on this subject as our research and that of counsel has failed to produce much that is helpful.

Section 810 of the Pennsylvania Vital Statistics Law of 1953 (Act of June 29, 1953, P. L. 304) provides:

"Records: Evidentiary sufficiency. Any record or duly certified copy of a record or part thereof which is (1) filed with the department in accordance with the provisions of this act and the regulations of the Advisory Health Board and which (2) *is not a 'delayed' record filed* under section seven hundred two of this act or *a record 'corrected'* under section seven hundred three of this act shall constitute prima facie evidence of its contents. . . ." (Italics supplied)

Similarly, the Act of May 4, 1939, P. L. 42, section 2, cited as the "Uniform Business Records as Evidence Act", making business records competent legal evidence under certain conditions, specifically requires that the record be made:

". . . in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and

time of preparation were such as to justify its admission."

Thus, it would seem that records, whether they are public or private in nature, made here in Pennsylvania, would only be admissible in evidence if made contemporaneously with the facts sought to be established by them. Records made many years after the occurrence of the events they purport to confirm, as were the Russian records in the present case, would not be admissible. Surely, records made in a village in distant Russia have no more sanctity in Pennsylvania courts than those made in our own state.

We recognize that the public records in many countries, especially those which have been overrun by hostile military forces, as in the case of Russia, are in deplorable condition or completely nonexistent. As a consequence, citizens of these countries are often unable to produce satisfactory proofs of vital statistics, such as birth, marriages and deaths. This is unfortunate, but, nevertheless, we must insist upon proof of kinship in each case which meets the requirements of our law.

We are not prepared to say that all public records made *post litem motam* are inadmissible in evidence. We do say, however, that such documents will not be admitted unless we are absolutely certain that the source of the information is untainted and the facts upon which the record is based have been established beyond doubt as unimpeachable, impartial and trustworthy.

The present case is not such a case. The information contained in the reconstructed entries appears to have been specially tailored to meet the facts of our case and is obviously based upon information supplied by people who could not possibly have any personal knowledge of the facts which the records purport to establish. Exhibit 10, therefore, cannot be admitted in evidence.

Claimant's next step, apparently, was to have several of his neighbors execute a document which is designated "Act of Witnesses Testimony", authenticated by the Supreme Court of the Byelorussian SSR and the United States Consul in Russia (Exhibit No. 3).

This writing commences as follows:

"We, the undersigned, Grigory Dmitrievich Marchuk, born in 1884, Victor Ignatievich Karpovich, born in 1892, and Roman Yurievich Malika, born in 1888, residents of the Village of Vasevichi ... *are not related to the Malika family. ...*"

Without in any manner indicating the source of their information, they attempted to establish the marriage of claimant's parents in 1876, as well as the birth of claimant in 1876, and that of decedent in 1882. They also testified with respect to other events which occurred when they were infants or very young children.

In Garrett Estate, 371 Pa. 284, 288 (1952), the Supreme Court reaffirmed the well-settled rule with respect to pedigree declarations as exceptions to the hearsay rule:

"Declarations as to pedigree are admissible if (1) the declarant is dead; (2) the declarations were made before the controversy arose or as is frequently said, 'ante litem motam'; and (3) the declarant was related to the family of which he spoke, and this relationship is proved by evidence dehors the declaration. The rule does not require that the witness who testifies in court must be related to the person whose pedigree is under consideration, but that the declarant whose statements are given in evidence by the witness was so related: ..."

To the same effect see Link's Estate (No. 1) 319 Pa. 513, 520 (1935); Sitler v. Gehr, 105 Pa. 577, 596 (1884).

It is clear that this document is inadmissible as it not only was made *post litem motam,* but also was

made by persons not related to decedent by blood or marriage concerning events which occurred before they were born or when they were too young to have any possible awareness or comprehension concerning them.

The next step taken by claimant to establish his claim was to secure what is designated *Decision* of the People's Court of Dyatlovsky District, Grodnenskaya Province, which was apparently confirmed by the Supreme Court of Byelorussian SSR.

This decision decides, inter alia, that decedent's parents were Leon Kazimirovich Malika and Anastasia Sinevich; that they were married in 1875; that two children were born of the marriage, Filipp, presumably the claimant, in 1876, and Anton, presumably the decedent, in 1882; and that the mother died in 1890 and the father in 1904.

Are we obliged to give full faith and credit to these judicial findings of the Russian Court? If we are, this case is at an end as claimant would have established that he is decedent's closest surviving next of kin.

This question has also been settled recently by our Supreme Court in Christoff Estate, 411 Pa. 419 (1963), in which Mr. Justice Jones, speaking for a unanimous court, said, at page 422:

"Although we must give full faith and credit under the mandate of the United States Constitution to a decree of adoption by a court of a sister State if such court had jurisdiction over the parties and the subject matter, judicial decrees rendered in foreign countries depend for recognition in Pennsylvania upon comity: Commonwealth ex rel. v. Yarnell, 313 Pa. 244, 250, 169 A. 370; Commonwealth ex rel. v. Doughty, 187 Pa. Superior Ct. 499, 506, 144 A. 2d 521; Commonwealth ex rel. v. Manzi, 120 Pa. Superior Ct. 360, 367, 182 A. 795. Under the principles of comity the recognition of a foreign decree is not a matter of absolute obliga-

tion. Hilton v. Guyot, 159 U.S. 113, 16 S. Ct. 139; 11 Am. Jur. §5, p. 299. We do, and will, treat the judgment and decree of a foreign judicial tribunal with the greatest respect and deference. Nevertheless, it is the primary duty of the courts of this Commonwealth to ensure that justice is done and we forebear to promulgate a rule that a decree of a foreign tribunal must be extended the same degree of faith and credit as that which would be extended to the judicial decree of a sister state."

Mr. Justice Jones continues, at page 423:

"Where, as in the case at bar, it clearly appears that one of our domiciliaries invoked the process and the jurisdiction of a foreign tribunal we must ordinarily grant recognition and credit to the decree of such a tribunal unless the decree is so palpably tainted by fraud or prejudice as to outrage our sense of justice or where the process of the foreign tribunal was invoked to achieve a result contrary to our laws or public policy or to circumvent our laws or public policy."

Before we give faith and credit to the judgment of a foreign court, we should look carefully into the background of the case and the circumstances under which the decision was made.

An examination of the record discloses at a glance that the court's conclusions are predicated principally upon the testimony of the same three witnesses who executed the "Act of Witnesses Testimony", previously referred to, none of whom were related to the Malika family and whose testimony relates to events concerning which they could not possibly have any personal knowledge.

In determining what effect is to be given to the decision of the Russian court, we must not overlook the basic circumstances of this case. Anton Malika died a resident of Philadelphia in 1943, and the account of

Catherin Kozlow, the administratrix, was filed in this court in 1946. The question submitted to us for determination was whether decedent was survived by any next of kin. Decision of this case was delayed these many years, primarily to enable claimant to establish his claim.

What he is now trying to do is to divest the jurisdiction of this court in the matter and vest it in the Russian court. This he cannot do.

It would be a travesty of justice if we were to permit the claimant to establish his claim by means of the decision of the Russian court. Under the laws of this state, the Commonwealth is the presumptive heir of this decedent, and the burden is upon those who claim kinship to prove their claims by a fair preponderance of trustworthy and satisfying evidence: Link's Estate (No. 1), supra. Claimant, being confronted with a situation where the evidence upon which he relies is inadmissible, cannot be permitted to transfer jurisdiction over the crucial question in the litigation to a court in Russia, where no such prohibition exists with respect to the admission of the same evidence, and where his witnesses cannot be subjected to cross examination to test the source of their information and their veracity. Distribution of the fund before us must be controlled by the laws of decedent's domicile, not those of the domicile of claimant. The responsibility for ascertaining whether decedent left any heirs surviving him belongs to this court, and to this court alone. We cannot delegate to the Russian courts the duties and responsibilities which are placed upon us by the laws of this Commonwealth. See Feodor's Estate, 53 D. & C. 95 (1945).

Many other writings have been offered in evidence in behalf of claimant. Exhibit 2 is a certificate that the identity of Filipp Leontievich Malika, claimant, and

his five children, has been ascertained by the Russian courts. This writing will be admitted for the limited purpose of establishing that claimant and his children are the individuals they claim to be, but not that they are related to decedent. Exhibit 5, which is an affidavit of claimant's neighbors, is admitted for the same limited purpose.

Exhibit 6, an unsigned letter dated March 7, 1921, purporting to have been written by decedent, is clearly inadmissible, as is Exhibit 7, a self-serving letter, written by claimant to counsel on July 17, 1957. Exhibits 8 and 9, purporting to be photographs of claimant and his family, are inadmissible, as the documents to which they are attached have not been authenticated by an American Consular agent. However, they may be useful in the future, so they will be received for the record.

As part of Exhibit 11, claimant has offered reconstructed birth and marriage certificates of his children, and Exhibit 13 consists of powers of attorney of the children, appointing the law firm of Ostroff, Lawler and Baker, as their counsel. Since claimant, Filipp Leontievich Malika, is living, his children have no interest in this litigation at this time. In view of the fact that claimant is an elderly man, we agree that these exhibits should be accepted for the record to await future developments.

We are, therefore, all in agreement with the conclusion of the auditing judge, awarding the balance in the account to the Commonwealth of Pennsylvania without escheat pursuant to section 1314 of the Fiscal Code of 1929, without prejudice to the rights of claimant, in future proceedings, to establish that he is decedent's brother and to prove his identity in accordance with the requirements of our law.

Accordingly, the exceptions are dismissed and the readjudication is confirmed absolutely.