## Krepinevich Estate.

Argued October 10, 1968. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*James Francis Lawler*, with him *Ostroff & Lawler*,
for appellants.

*Francis J. Gafford*, Deputy Attorney General, with
him *Robert J. Stock*, Counsel, and *William C. Sennett*,
Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, January 15, 1969:

Martin Krepinevich (decedent), a Butler County
resident, died intestate as the result of an automobile
accident which occurred on October 6, 1962. An audi-
tor was appointed by the Orphans' Court of Butler
County to determine the heirs of the decedent and to
recommend the manner of distribution of his estate.

There were two claimants to the estate: (1) Us-
tina Mitrofanovna Krepinevich (appellant), claiming
as widow of the decedent and as his sole heir on the
basis that he was survived by "no issue, parent, broth-
er, sister, child of a brother or sister, grandparent,
uncle or aunt" as provided by §2(4) of the Intestate

Act of 1947, P. L. 80, as amended, 20 P.S. §1.2(4);[1] (2) The Commonwealth claiming under §1314 of The Fiscal Code of 1929, P. L. 343, 72 P.S. §1314 in the event that the evidence failed to establish that the appellant is the widow of the decedent.[2]

The auditor held that the appellant had failed to prove that she was the widow of the decedent and recommended that the funds of the estate be awarded to the Commonwealth without escheat. The Orphans' Court of Butler County adopted the auditor's findings of fact and conclusions of law and awarded the estate to the Commonwealth.

The standard the appellant must satisfy in order to substantiate her claim as a widow was enunciated by this Court in *Link's Estate (No. 1)*, 319 Pa. 513, 522, 523, 180 Atl. 1 (1935): "The evidence to sustain relationship must bear on every material feature necessary to support a finding of kinship. It must be grounded on a reasonable certainty and come from witnesses whose truth and candor are not questioned. To defeat the claim of the Commonwealth the evidence must be so clear, precise and definite in quality and quantity as to satisfy the court below that the relationship claimed existed." See also: *Davis Estate*, 365 Pa. 605, 608, 76 A. 2d 643 (1950); *Schultz Estate*, 32 Pa. D. & C. 2d 312, 321 (1963); *Stevens Estate*, 28 Pa. D. & C. 2d 658, 662 (1962); *Martinzik Estate*, 25 Pa. D. & C. 2d

---

[1] "The surviving spouse shall be entitled to the following share or shares: . . . (4) No issue or other designated person. All of the estate if the decedent is survived by no issue, parent, brother, sister, child of a brother or sister, grandparent, uncle or aunt."

[2] "In any such case of unawarded moneys, or of moneys awarded to claimants the whereabouts whereof or that of their legal representatives the fiduciary has been unable to ascertain, the court having jurisdiction of his accounts may, upon motion, or on its own initiative, in its discretion, order the payment of such moneys into the State Treasury, . . ."

701, 707 (1962). Specifically, appellant must prove (1) that she is the decedent's widow and (2) that the decedent was not survived by any issue, parent, brother, sister, child of a brother or sister, grandparent, uncle or aunt. See: *Bokey Estate*, 412 Pa. 244, 250, 194 A. 2d 194 (1963).

We start with the understanding that findings of fact by an auditor when approved by the Orphans' Court are entitled to as much weight as the verdict of a jury and will not be set aside except for manifest error. See: *Istocin's Estate*, 126 Pa. Superior Ct. 158, 161, 190 Atl. 382 (1937). We believe, however, that the auditor has committed manifest error in this case.

Appellant's evidence consisted primarily of the testimony of persons who knew personally either the decedent or the appellant or both. Mrs. Sadie Lagodich, appellant's first cousin and a native of the Soviet Union, was examined by deposition in Hartford, Connecticut. She testified that she personally knew appellant, that she knew that appellant had married the decedent and that she knew where they lived after the marriage. She could not remember when they were married; she was not actually present at the marriage ceremony. She remembered that the couple had three or four children. Mrs. Lagodich returned to Russia for a visit in 1929, and at that time she talked with appellant. In the course of her visit she was informed that all the children of appellant and decedent had died during World War I. Appellant spoke of her husband and the fact that she was now living alone. She asked Mrs. Lagodich to contact her husband when she returned to the United States. Mrs. Lagodich has not seen nor heard from the decedent since 1915 in Springfield, Massachusetts.

Mrs. Lagodich testified that she corresponds regularly with her niece in Russia who often mentions the

appellant and relays messages for her since appellant is illiterate. Mrs. Lagodich recently sent some items to the appellant and the niece wrote back that appellant had received the items. A recent letter from the niece indicated that appellant was aware that her husband had been killed.

The auditor found that Mrs. Lagodich's testimony was "confused and uncertain." On the contrary, we find that her testimony is remarkably consistent. Mrs. Lagodich, who was 70 years old when she testified, was questioned about events which transpired 50 years ago. It is not surprising that she has forgotten some details. She remembers clearly the facts which are important for the resolution of this case. The fact that she cannot remember when the couple was married and that she did not attend the wedding are of little consequence. What is important is that she knew both appellant and the decedent and knew that they were, in fact, married. It is important to note that the auditor did not question the credibility of Mrs. Lagodich but merely the probative weight of her testimony. While the auditor must determine the credibility of the witnesses (*Dettra Will*, 415 Pa. 197, 202, 202 A. 2d 827 (1964) ; *Patterson's Estate*, 237 Pa. 24, 27, 85 Atl. 75 (1912) ), an appellate court is certainly in as good a position as the auditor to judge the probative weight of evidence given by deposition.

Theodore Krepinevich, executor of the estate, testified that he had known the decedent since 1906, that he had come to the United States in 1912 and that decedent had come in 1913. He was aware of the marriage of the decedent, but it is not clear whether he actually knew the appellant. Mr. Krepinevich testified that decedent had only one child who died during the War. When asked about Mrs. Lagodich's testimony, Mr. Krepinevich testified that decedent had told

him that his wife had remarried and had other children by her second and third husbands.

The auditor places much weight on this inconsistency between the testimony of Mrs. Lagodich and Mr. Krepinevich. The apparent inconsistency is of no consequence, however. Both parties testified that decedent married the appellant and that there are no surviving children of the marriage. Mr. Krepinevich did not testify that decedent and the appellant were divorced. "Upon proof of a valid marriage, the law presumes that such marriage *continues* until the death of one of the parties (actual or presumptive after seven years) or a divorce is proven." *Watt Estate*, 409 Pa. 44, 51, 185 A. 2d 781 (1962). Both parties have testified to the fact of the marriage, and Mrs. Lagodich has testified that the appellant survived her husband. Therefore, absent proof of a divorce, there is a presumption that the appellant was still married to her husband at the time of his death. There is no evidence whatsoever in the record that there was a divorce.

Michael Mamula, decedent's attorney, testified that he knew of decedent's wife, that decedent regularly sent her money, that the address given as appellant's address in Russia corresponded with the address to which the money was sent. Mr. Mamula further testified that the decedent had discussed with him leaving his estate to his wife in Russia but that he was concerned that the estate would be confiscated.

Letters rogatory were also issued to examine the appellant in the Soviet Union; the Commonwealth was given the opportunity to file interrogatories. Appellant testified that she married the decedent in 1904, that they had four children, two of whom died before decedent left Russia in 1912 and two of whom died after he left Russia. She stated that she corresponded regularly with her husband until 1960, and the address she gave corresponded with the decedent's address at

the time of his death. She testified that they were never divorced, that she knew Sadie Lagodich, that she corresponds with her regularly, and the address she gave corresponded with Mrs. Lagodich's present address.

A power of attorney was issued to the law firm of Wolf, Popper, Ross, Wolf and Jones in New York, which appellant signed with three crosses. The accompanying notation of the witness indicates that appellant is illiterate, which squares with the testimony of Mrs. Lagodich to the effect that Mrs. Krepinevich could neither read nor write. While we have held that powers of attorney prove nothing more than that the person signing the document claimed to be the person whose name he signed unless there is additional corroborative evidence (*Slotkin Estate*, 40 Pa. D. & C. 2d 334, 339 (1965), aff'd. per curiam, 423 Pa. 628, 222 A. 2d 597 (1966); *Malika Estate*, 31 Pa. D. & C. 2d 736, 739 (1963)), yet we believe that the evidence outlined above does corroborate the signature on the power of attorney.

We hold that the evidence recited above indicates that decedent married Ustina Mitrofanovna Krepinevich, that the couple was never divorced and that Mrs. Krepinevich survived her husband. Therefore, appellant has proved that she is the widow and heir of the decedent. *Watt Estate*, 409 Pa. 44, 51, 185 A. 2d 781 (1962).

Appellant has proved that no children survived the decedent. She has not, however, proved that no parent, brother, sister, child of a brother or sister, grandparent, uncle or aunt survived the decedent, and, since she has failed to prove this, she can only qualify under Section 2(3) of the Intestate Act.[3] We believe that

---

[3] "The surviving spouse shall be entitled to the following share or shares: . . . (3) No issue. The first ten thousand dollars in

justice requires that we remand this case to the Orphans' Court below to enable the appellant to bring forth evidence, if she can, indicating that none of the persons listed above is now living. Since we are remanding the case, we will also offer the Commonwealth an opportunity to prove that the appellant will not have the actual "benefit, use, enjoyment or control of the money or other property" as required by Pennsylvania's Iron Curtain Act of 1953.[4] Under this act, should the court below decide that appellant will not have the use of the money, it can award the money to the Commonwealth without escheat. If the Commonwealth decides to raise this issue on remand, it should be prepared to argue the constitutionality of the Iron Curtain Act in light of the United States Supreme Court's decision in *Zschernig v. Miller*, 389 U.S. 429 (1968).[5]

Decree vacated and matter remanded to the court below for proceedings consistent with the views expressed in this opinion. Estate pays costs.

Mr. Justice MUSMANNO did not participate in the decision of this case.

---

value and one-half of the balance of the estate, if the decedent is survived by no issue; . . ."

[4] "Whenever it shall appear to the court that if distribution were made a beneficiary would not have the actual benefit, use, enjoyment or control of the money or other property distributed to him by a fiduciary, the court shall have the power and authority to direct the fiduciary (a) to make payment of the share of such beneficiary at such times and in such manner and amounts as the court may deem proper, or (b) to withhold distribution of the share of such beneficiary, convert it to cash, and pay it through the Department of Revenue into the State Treasury without escheat." P. L. 674, §2, 20 P.S. §1156.

[5] The Philadelphia Orphans' Court has recently held that the Iron Curtain Act is unconstitutional. See: *Struchmanczuk Estate*, 44 Pa. D. & C. 2d 155 (1968).

Concurring and Dissenting Opinion by Mr. Justice O'Brien:

I agree with the majority that appellant has proved that she is the widow and heir of the decedent. However, I disagree as to the consequences which follow.

The majority would award the widow only $10,-000.00 and the one-half of the estate to which she is entitled under §2(3) of the Intestate Act, Act of April 24, 1947, P. L. 80, §2, 20 P.S. §1.2. That provides that where there is no issue, the widow gets $10,000.00 plus one-half the balance. However, §2(4) provides that where the decedent is survived by no issue, parent, brother, sister, child of a brother or sister, grandparent, uncle or aunt, then the widow is entitled to the entire estate. The majority would deny the widow the balance of the estate on the ground that she failed to prove that no parent, brother, sister, child of a brother or sister, grandparent, uncle or aunt survived the decedent. I can see no reason whatsoever for placing this burden on appellant. It is in accordance with no sensible theory of allocation of the burden of proof. It requires appellant to prove a negative. It requires her to prove facts about which she may have no way of knowing. If it be replied that the Commonwealth likewise has no means of knowing these facts, the absurdity of the majority position becomes manifest. The Commonwealth would have no way of knowing because it is not even a proper disputant as to these funds. The dispute is between the widow and all the other relatives, if there are any. It must be presumed that if these existed, they would have come forward. The proof of their existence was indeed peculiarly within their knowledge. They would be proving a positive. It makes no sense at all to give a portion of the estate to the Commonwealth because the widow did not prove the nonexistence of relatives who, if they had existed,

would have been entitled to that portion. Either the widow gets it, or the relatives get it. They have not claimed it, so she is entitled to it.

It is true that in *Bokey Estate*, 412 Pa. 244, 250, 194 A. 2d 194 (1963), there is language to the effect that one more distant in relationship must prove the nonexistence of those closer. There it was an alleged first cousin who had not proven the nonexistence of brothers, sisters, or their issue. However, the language in that case was purely dictum inasmuch as the alleged first cousin had not proven that he was a first cousin and thus could not take regardless of the existence or nonexistence of other relatives. Aside from that dictum in *Bokey*, no other case that I have found supports the utterly unjustifiable rule opted for by the majority. Since appellant has proved that she is the widow, and since there are no other relatives claiming as heirs, I would award appellant the entire estate.