## CIRCUIT COURT OF THE CITY OF RICHMOND

Marvin L. McDonald

v.

Treasurer of Virginia

December 2, 1991

Case No. HB-575-4

BY JUDGE RANDALL G. JOHNSON

This is an action brought pursuant to Va. Code Section 55–210.22 to establish a claim to abandoned property now being held by the Commonwealth. The petition states that on November 7, 1975, the Circuit Court of Warren County, in a then-pending case, entered a decree of distribution ordering the special commissioners to "pay over all of the funds due to all of the said heirs-at-law of the said James O. McDonald, deceased, as set forth in said scheme of distribution to Farmers and Merchants National Bank of Front Royal, Virginia, as a General Receiver for the Circuit Court of Warren County, Virginia, which shall hold the said funds with interest thereon until further order of the Court." The petition further alleges that on June 24, 1989, the Circuit Court of Warren County ordered that the subject funds be paid into the state treasury as unclaimed property in accordance with Va. Code Section 55–210.12 *et seq.* Petitioner alleges that he is an heir of James O. McDonald, that he is the only person to have made a claim for the funds, and that he is entitled to all, or at least a part, of the funds.

The Treasurer has filed a demurrer. In the demurrer, the Treasurer states that petitioner is entitled to the subject funds only if he can prove that there is no heir in a class of descent higher than petitioner and that since petitioner stated in his administrative claim to the

Treasurer that it is unknown whether James McDonald had any children, petitioner, who is not a child of James McDonald, cannot establish his claim in court. I disagree.

As necessarily implied by the Treasurer's demurrer, the issue at this point in the proceedings is whether a person, in order to recover statutorily-defined unclaimed property, must prove the nonexistence of other persons who have an equal or superior claim to the property.[1] In other words, must unclaimed property remain in the hands of the Treasurer so long as there is any possibility that someone with an equal or superior claim to the property is alive? I think not.

Virginia is one of many states that have adopted some form of the Uniform Disposition of Unclaimed Property Act. While Virginia's Act allows persons to file claims with the Treasurer for unclaimed property and to commence an action in circuit court if he or she is aggrieved by the Treasurer's decision or failure to act, the Act is silent on what evidence a claimant is required to present or what burden of proof a claimant is required to meet to establish a claim at either level. Moreover, it does not appear that our Supreme Court has ever had occasion to address those issues. The court concludes, however, that the burden sought to be imposed by the Treasurer on petitioner here is inappropriate.

First of all, it should be noted that to a large extent, the Unclaimed Property Act is to personal property what the law of escheat is to real property, and it has long been recognized that the law does not favor escheat:

> The law does not favor escheat . . . . Rather, society prefers to keep real property within the family as most broadly defined, or within the hands of those whom the deceased has designated. Land escheats to the state only as a last resort, when no one else is qualified to own it. At common law, escheat occurred when the owner died intestate, "leaving no person capable of succeeding to the estate as his heir . . . ." In Virginia, as at common law, escheat occurs "wherever there is a total failure of a decedent's kindred by blood or by marriage . . . ." *United States v.*

---

[1] While the demurrer only speaks to superior claims, equal claims must also be considered since under the Treasurer's argument, a claimant cannot recover ALL unclaimed property if someone else may exist who is entitled to any of it.

*198.73 Acres of Land, More or Less*, 800 F.2d 434, 435 (4th Cir. 1986) (*quoting* 2 R. Minor, *The Law of Real Property*, § 900 at 1151–52 (2d ed. Ribble 1928)). *See also, In re Estate of Holmlund*, 232 Or. 49, 374 P.2d 393, 396 (1962); *State v. United States Steel Corp.*, 12 N.J. 38, 95 A.2d 734, 738 (1953); *In re Spinosa's Estate*, 117 Cal. App. 2d 364, 255 P.2d 843, 848 (1953).

It is true that unlike escheat, in which title to real estate actually vests in the state, title to unclaimed personalty never so vests.[2] Still, I see no more reason to deprive a claimant of his or her kindred's personal estate than to deprive him or her of such kindred's real estate simply because there is a possibility, however remote, that another heir somewhere exists. While it is true that title to unclaimed personal property never vests in the state, the fact that the state has use of the property — and will have such use in perpetuity in the absence of a valid claim — makes the effect of denying the claim of the only known heir every bit the same as declaring a "total failure of a decedent's kindred" for purposes of escheat. Indeed, if the Treasurer's position is correct, we would have the anomalous situation of a claimant, who happened to hear his grandfather mention thirty years ago that a distant cousin *may have* a daughter, now being entitled to inherit *all* of the distant cousin's land, but *none* of the distant cousin's personal property, even though the claimant is the only known heir of the distant cousin, and even though the distant cousin's "daughter" has never been seen nor heard of by anyone known to the claimant, the grandfather's reference thirty years ago being the only "evidence" of such daughter's existence. Such a result, in my opinion, is not warranted by existing law.[3]

---

[2] Under this Act, funds turned over to the Treasurer as abandoned are deposited in the Commonwealth's Literary Fund, except that a sufficient amount is retained by the Treasurer to satisfy valid claims. As such, as the Treasurer correctly argues, the funds are held by the state in trust for the benefit of valid claimants. See Va. Code Section 55-210.19.

[3] Of course, it might be said that all the claimant in the hypothetical need do is keep his mouth shut about his grandfather's comment. This might be true. However, this court hopes that the law will never be interpreted in such a way as to reward a claimant for withholding possibly relevant information or to punish a claimant for being truthful.

In reaching this conclusion, the court notes that courts in other jurisdictions which have addressed the issue have reached conflicting results. In *In re Tim's Estate*, 180 So. 2d 161 (Fla. 1965), the Supreme Court of Florida decided the issue precisely as the Treasurer would have the court decide it here. Specifically, the Florida court stated:

> The mere fact of a blood relationship with the deceased does not, of itself, establish a right to share in his estate . . . . Our Statute of Descent and Distribution . . . establishes the order of succession of an intestate's property in this state; and to be "entitled" to inherit a share of the estate, there must be no other persons of a class having a prior right, under the established order of succession, to such estate . . . . The burden of proving the existence of the state of facts upon which the statutory right to inherit depends should be upon the one asserting such statutory right. 180 So. 2d at 163.

To the same effect is *In re Estate of Krepinevich*, 433 Pa. 78, 248 A.2d 844 (1969), in which the Supreme Court of Pennsylvania stated that in order to show entitlement to a decedent's estate, the claimant had to show that she was the decedent's widow, *and* that the decedent was not survived by any issue, parent, brother, sister, child of a brother or sister, grandparent, uncle or aunt. 248 A.2d at 845.

On the other hand, a court in California, which has a five-year statute of limitations for making a claim on abandoned property, has held that such property must be turned over to known heirs even before such statute has run, and notwithstanding the fact that other heirs *might* exist:

> [T]he principle of avoiding permanent escheats compels the immediate distribution of an escheated estate to the sole known heir even before the expiration of the five-year waiting period, notwithstanding the possibility that unknown heirs closer in kinship to the decedent might file later claims within the five-year deadline. *Estate of Supeck*, 274 Cal. Rptr. 706, 712, 225 Cal. App. 3d 360 (1990).

Even more to the point was a Missouri court in *Matter of Estate of Willard*, 674 S.W.2d 139 (Mo. App. 1984), which held that contrary to there being a burden on the claimant to prove the nonexistence of

closer heirs, the burden is upon the *state* to show that closer heirs do exist:

> The state [is] held to this burden because of the presumption of law, " . . . raised in favor of the existence of some person who is capable of inheriting the estate of the decedent . . . This presumption . . . is so strong, that it can only be overcome by positive proof of the want of persons capable of taking the estate under the laws of descent and distribution . . . ."
>
> *We find that claimants should not be held to this burden of proof.* 674 S.W.2d at 140 (emphasis added).

Finally, this court is particularly impressed with the dissenting opinion of Justice O'Brien in *In re Estate of Krepinevich, supra.* As noted above, that case held that the burden was on the claimant to show that no other relatives of the decedent, higher in succession to her, existed. Justice O'Brien vehemently protested:

> The majority would deny the widow the balance of the estate on the ground that she failed to prove that no parent, brother, sister, child of a brother or sister, grandparent, uncle or aunt survived the decedent. I can see no reason whatsoever for placing this burden on appellant. It is in accordance with no sensible theory of allocation of the burden of proof. It requires appellant to prove a negative. It requires her to prove facts about which she may have no way of knowing. If it be replied that the Commonwealth likewise has no means of knowing these facts, the absurdity of the majority position becomes manifest. The Commonwealth would have no way of knowing because it is not even a proper disputant as to these funds. The dispute is between the widow and all the other relatives, if there are any. It must be presumed that if these existed, they would have come forward. The proof of their existence was indeed peculiarly within their knowledge. They would be proving a positive. It makes no sense at all to give a portion of the estate to the Commonwealth because the widow did not prove the non-existence of relatives who, if they had existed, would have been entitled to that portion. Either the widow gets it, or the relatives get it. They have not claimed it, so she is entitled to it. 248 A.2d at 848.

Because of the strong policy against escheats, which policy, I believe, applies equally to abandonment of personal property, and because I, like Justice O'Brien, believe it is inappropriate to require petitioner to prove a negative, I reject the Treasurer's argument and overrule his demurrer.