424 A.2d 1227

**ESTATE of John H. McCLATCHY, Deceased.**

**Appeal of J. Howard MECKE, III and Mary Elizabeth Comiskey, Executors.**

Supreme Court of Pennsylvania.

Argued Oct. 14, 1980.

Decided Jan. 27, 1981.

Dunstan McNichol, Philadelphia, for appellant.

Calvin S. Drayer, Jr., Norristown, for appellee.

J. Brooke Aker, Norristown, for McClatchy, et al.

Robert E. J. Curran, Media, for Curran, et al.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is an appeal from a decree of the Orphans' Court Division of the Court of Common Pleas of Montgomery County directing final distribution of the estate of John H. McClatchy. The decree also dismissed the exceptions of appellants, executors of the estate of Marie J. Mecke (a

daughter and heir of decedent McClatchy), to the second and third accounts of appellees, executors of the McClatchy estate.[1] Appellants' sole claim is that the auditing judge erred in allowing a total of $44,000 in counsel fees to be charged against the estate. Appellants allege that $19,000 of this amount represents compensation for services to the executors individually, not to the estate, and thus should have been paid personally by appellees.

This is the second time that we have been asked to consider such a claim in connection with appellees' administration of this estate, see *McClatchy Estate*, 433 Pa. 232, 249 A.2d 320 (1969). As we did eleven years ago, we hold again today that the auditing judge did not abuse his discretion in allowing the full amount of counsel fees for the complex and lengthy administration of this estate to be charged against the estate. Accordingly, the decree is affirmed.

Most of the relevant facts of this controversy are recounted and considered in our 1969 opinion. In that proceeding, certain heirs of John H. McClatchy, not including the present appellants' decedent, argued numerous objections to appellee executors' first account of the estate, all of which were decided in favor of appellees.[2] There, in addressing the appellants' contention that the $25,000 of paid and projected counsel fees listed in the first account was excessive and that the excess represented compensation for services to the executors individually, we adopted and quoted the view of Auditing Judge Taxis:

" 'We agree that the major issues raised by these objections have related to the ownership of property claimed by the executors as their own. The fact that the objectors raised these issues, however, is not the fault of the executors, and the questions here under discussion could take on a serious mien only if the executors and their attorneys claimed additional fees for the present litigation which they have not. The executors and their counsel should

1. John H. McClatchy died in 1960. Marie J. Mecke died in 1975.

2. The heirs who brought the previous appeal to this Court in 1969 have not challenged the present decree.

certainly be compensated for the ordinary and normal work which they have done, and the responsibility assumed, which in an estate of this size, is considerable. Probate, advertising, tax returns, and accounting are only some of the matters which have to date been handled by the executors and their attorneys. The fees and compensation claimed are in amounts which would be fair and reasonable had no extraordinary problems arisen in the estate.' We therefore reject appellants' contention that these fees were improper."

433 Pa. at 239–40, 249 A.2d at 323–24.

The present appellants now argue that because the total of counsel fees has risen to $44,000, the question of fees has taken on the "serious mien" envisioned by Judge Taxis in his 1967 opinion. They do not argue that $44,000 is an unreasonable total fee for the work performed. Rather, alleging that $25,000 is the usual fee for services of counsel on behalf of similar estates, they contend that, absent a showing by appellees to the contrary, the excess must be presumed to represent compensation for services on behalf of the executors individually and thus should not have been paid by the estate.

At the December 1977 hearing on this issue, appellants presented no evidence that counsel for the estate had in fact performed any services for the executors individually. Instead they offered the testimony of a practitioner in decedents' estates that "absent unusual complications," the "normal, proper" counsel fee for services to an estate like that of John H. McClatchy would be "on the order of twenty to twenty-five thousand dollars."[3] On cross-examination, appellants' witness admitted that he was unfamiliar with many of the myriad complexities in the administration of the McClatchy estate and that his opinion was based only on a reading of the three accounts prepared by the executors and two of the several opinions rendered over the years in the collection of controversies surrounding this estate. Appellants then concluded their presentation with the follow-

3. Record at 43a.

ing statement: "It is our position that, having produced testimony as to what would be a reasonable fee in the circumstances, that if there are extraordinary services performed, it is the burden of the accountants [appellees] to produce testimony of that."[4]

■ With nearly twenty years of judicial involvement in the administration of the McClatchy estate, Judge Taxis replied that he had no need of such testimony, for he knew from his first-hand experience and his familiarity with the entire record that "extraordinary services" had in fact been rendered and that these services had been performed on behalf of the estate. As this Court did before, we again accept and set forth the findings of the orphans' court:

"Happily, this Court has been the Judge involved in all matters before the lower court in the John H. McClatchy Estate which has been in administration for approximately eighteen-and-a-half years. During that course of time this Court has first-hand knowledge of the many conferences conducted by the Court preparatory to the trials conducted by this Court, the memorandum opinions written by this Court and, on one occasion, affirmed by the Pennsylvania Supreme Court. To say the least, this is an estate in which extraordinary services were performed by counsel in defense of this estate. At the outset, forty-three objections were filed to the administration of this estate, ten of which were heard by the Court. The other thirty-three were withdrawn as a result of many conferences with counsel for the contending parties. It would serve no purpose to detail in full all of the problems confronted by the executors and the defense of the estate by counsel for the executors. In broad outline some of the children and grandchildren of this decedent were unhappy and disappointed by the way in which this decedent elected to dispose of his interests in corporations and their inability to accept the decedent's decisions in an estate which at one time grossed approximately $8,000,000. Suffice it to say that the Court has considered the objections

4. Id. at 50a.

filed in light of the criteria to be employed as set forth in *LaRocca Est.*, 431 Pa. 542, at 546, [246 A.2d 337, at 339.] [5] This Court is satisfied beyond any doubt that services of counsel represent[ed] services of extraordinary nature on behalf of the estate and that the $19,000 charged for the same are not only fair and reasonable in amount but indeed modest."

In making these findings, the court did not disregard the opinion of appellants' witness that $25,000 would be a reasonable fee "absent unusual complications." The auditing judge simply found, on the basis of his extensive knowledge of the record and experience with the estate, that "unusual complications" did exist, that extraordinary services had been rendered on behalf of the estate, and that $19,000 was a thoroughly reasonable fee for those services. Now, although they have presented no evidence to refute or even to challenge these findings, appellants would nonetheless have this Court hold that the auditing judge erred in reaching his conclusions.

As this Court observed in *Thompson Estate*, 426 Pa. 270, 281–82, 232 A.2d 625, 631 (1967):

"It is a 'well entrenched rule of law in this State that the responsibility for determining the amount of counsel fees rests primarily with the auditing judge.': *Mosicant Estate*, 16 Pa.D. & C.2d 66 (1959), *Bickel Appeal*, 388 Pa. 270, 130 A.2d 498 (1957) affirms this: '*In Good's Estate*, 150 Pa. 307, 310, [24 A. 623,] this Court stated: "The amount of

**5.** *LaRocca* provides the following guidelines:

"The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question." (Footnote and citations omitted).

431 Pa. 542, 546, 246 A.2d 337, 339 (1968).

fees to be allowed to counsel, always a subject of delicacy if not difficulty, is one peculiarly within the discretion of the court of first instance. Its opportunities of judging the exact amount of labor, skill and responsibility involved, as well as its knowledge of the rate of professional compensation usual at the time and place, are necessarily greater than ours, and its judgment should not be interfered with except for plain error . . . ." Both *Good's Estate* and *Rambo's Estate*, 327 Pa. 258, 266, 193 A. 1, of similar import, have been cited with approval in *Harton's Estate*, 331 Pa. 507, 523, 1 A.2d 292; *Berkowitz's Estate* (No. 2), 344 Pa. 485, 486, 26 A.2d 295; *Davidson's Estate*, 334 Pa. 389, 395, 6 A.2d 73, and *Lare Estate*, 368 Pa. 570, 84 A.2d. 334. In *Rambo's Estate*, supra, we said: "This court has frequently held that the allowance or disallowance of counsel fees rests generally in the judgment of the court of the first instance and its decision will not be interfered with except for palpable error:" . . . .' (426 Pa. 276, 277) [232 A.2D 625.]"

Accord, *Browarsky Estate*, 437 Pa. 282, 263 A.2d 365 (1970); *LaRocca Estate*, 431 Pa. 542, 246 A.2d 337 (1968).

■ As the sole orphans' court judge of Montgomery County, Judge Taxis has judicially supervised all aspects of the administration of this complex estate for nearly two decades. As a consequence he is uniquely qualified to determine the nature and extent of the services rendered by counsel and the appropriateness of the fees charged and paid. On the basis of this continuous involvement and thorough familiarity with the record of the proceedings, and in the absence of any evidence that part of the services were rendered for the individual benefit of the executors, the orphans' court found that the total of $44,000 paid in attorneys' fees over the years of administration was both reasonable and proper and that appellants' challenges were without merit. Our scope of review is limited to determining whether the findings of the orphans' court are supported by competent evidence. "Findings of the orphans' court supported by evidence of record are entitled to the same weight

given a jury verdict and must be sustained unless the court abused its discretion or committed an error of law." *In re William L.*, 477 Pa. 322, 340, 383 A.2d 1228, 1237 (1978), *cert. denied*, 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192 (1978). *See also, e. g., Garges Estate*, 474 Pa. 237, 378 A.2d 307 (1977); *In re Wertman Estate*, 462 Pa. 195, 340 A.2d 429 (1975); *Button Estate*, 459 Pa. 234, 328 A.2d 480 (1974); *Cohen Will*, 445 Pa. 549, 284 A.2d 754 (1971); *Holtz Will*, 422 Pa. 540, 222 A.2d 885 (1966); *Hunter Will*, 416 Pa. 127, 205 A.2d 97 (1964). The record provides no basis for disturbing the court's adjudication.

Decree affirmed. Each party pay own costs.