691 A.2d 530

**ESTATE OF Alla A. BRUNER, Deceased.**

**Appeal of Harold R. FOX, Sr. and the Estate of Alla S. Bruner, Deceased.**

Superior Court of Pennsylvania.

Argued Oct. 29, 1996.

March 19, 1997.

706

708

Thomas A. James, Jr., Bloomsburg, for appellant.

Rebecca L. Warren, Bloomsburg, for Splain, participating parties.

Before CAVANAUGH and BECK, JJ., and CERCONE, President Judge Emeritus.

BECK, Judge.

Harold R. Fox, executor of the estate of Alla S. Bruner, challenges the trial court's decree which: 1) confirmed the report of an auditor concluding that the residue of the estate should pass through intestacy rather than under the proposed distribution submitted by the executor; 2) confirmed the auditor's finding that Fox should be surcharged for excessive counsel fees paid by the estate and for failure promptly to invest estate assets; and 3) directed payment from the estate of attorney's fees incurred by the heir who challenged Fox's

accounting of the estate. After careful consideration of the record and appellant's claims of error, we affirm.

Alla S. Bruner died leaving a will consisting of a form completed in her handwriting. The will made three individual bequests, then provided that "[a]ny remaining assests [sic] shall be dispenced [sic] by H.R. Fox as agreed by me and H. Fox, personally." The will also named H.R. Fox, appellant in the present case, as executor. The will was admitted to probate without challenge in October, 1992, and Fox, assisted by counsel, proceeded to administer the estate, converting all non-liquid assets to cash by the end of 1992. In May, 1994, Fox filed his accounting of the estate, proposing to pay the individual bequests and to distribute the residue of the estate to himself under the clause of the will permitting him to dispense remaining assets. On June 13, 1994, John E. Splain, a brother of the decedent, filed exceptions to Fox's accounting. The court appointed an auditor who, after hearing, determined that the residuary clause of the decedent's will was ineffective and that the residue of the estate must pass through intestacy. In addition, the auditor found that the executor should be surcharged $8500 for excessive attorney's fees charged against the estate, and that the executor should be surcharged $800 for failure to timely invest the estate assets. The auditor denied Splain's request that his attorney's fees be paid from the estate.

Both parties filed exceptions to the auditor's report. The trial court denied Fox's exceptions. Upon consideration of Splain's exceptions, the court found that his counsel fees of $2,229.75 should be paid by the estate. Splain's other exceptions were denied. The court entered its final decree on November 29, 1995 and this timely appeal by Fox followed.

In considering Fox's claims on appeal, we are mindful that [t]he standard of review of a decision of the Orphans' Court is to assure that the record is free from legal error and to determine if the chancellor's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evi-

dence.... [Moreover, the] chancellor, sitting as the trier of fact and viewing the witness[es] ha[s] the best opportunity to judge the credibility of and the weight to be assigned to th[e] testimony, and h[is] findings cannot be disturbed absent an abuse of discretion. Thus, while the [petitioner's] burden of proof is one of law, the reviewing court cannot reverse the chancellor's findings based merely upon its conclusion as to the weight to be given to ... [the] testimony, for that is within the sole province of the trier of fact. *In Re Estate of Braun,* 437 Pa.Super. 372, 376, 650 A.2d 73, 75–76 (1994) (quoting *In re: Estate of Cornell,* 511 Pa. 475, 479–80, 515 A.2d 555, 557 (1986)).

Fox's first claim is that Splain's challenge to the accounting of the estate should have been held time-barred because it was not brought within one year of the grant of probate of decedent's will. We disagree.

In claiming that Splain's challenge is untimely, Fox relies on Section 908(a) of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 908(a), which sets forth the time limit for filing appeals from decisions of the Register of Wills.[1] He interprets Splain's exceptions to the accounting as a challenge to the validity of the residuary clause and therefore to the will itself and argues that they should therefore have been raised within one year of the decree admitting the will to probate. We cannot agree with this interpretation of Splain's claim. The exceptions to the accounting challenged, not the validity of the will, but rather the propriety of Fox's reading of the residuary clause as a general power of appointment allowing him to distribute the residue to himself. Splain had no objection to the admission of the will to probate; his objection arose at the time Fox made known his proposed distribution of the estate. Stated in the language of Section 908(a) of the Probate, Estates and Fiduciaries Code, Splain was not "aggrieved" until Fox filed his accounting proposing to distribute the estate in a manner which excluded Splain and the other

---

1. 20 Pa.C.S. § 908(a) provides:
 Any party in interest who is aggrieved by a decree of the register ... may appeal therefrom to the Court within one year of the decree....

712

heirs at law. Accordingly, his time for appeal did not begin to run upon admission of the will to probate; it would have begun running only upon entry of a decree confirming Fox's accounting of the estate.

 Fox's second claim is that the trial court erred in finding that the residuary clause of decedent's will did not create a valid general power of appointment in Fox. We agree with the trial court that the clear language of the will gives Fox only the authority to distribute the estate in accordance with an agreement reached between Fox and the testatrix. It does not give the estate to Fox, nor does it give him the power to distribute the estate in any manner other than that agreed to by the testatrix.

 While no specific words or technical language are necessary to create a general power of appointment, the intention to create such a power must appear from the will as a whole. "[I]n construing a will, we must give effect to the testator's intention, and we can't do that unless we consider *every* feature and *all* of the words of the will." *Estate of Stewart,* 325 Pa.Super. 545, 473 A.2d 572 (1984) (citing *In re Estate of Kohler,* 463 Pa. 150, 344 A.2d 469 (1975); *Burleigh Estate,* 405 Pa. 373, 175 A.2d 838 (1961)). The language of the residuary clause is on its face insufficient to evince an intent on the part of the testatrix to create a general power of appointment in Fox. Moreover, no other feature or language of the will gives any indication that the testatrix had any particular reason or desire to benefit Fox to the exclusion of her heirs at law.[2]

2. The present case is thus clearly distinguishable from *Estate of Stewart, supra,* upon which Fox relies. In *Stewart,* we found that language allowing the executrix to "handle [the] estate as she sees fit" created a general power of appointment. However, that finding was made in the context of language in the will acknowledging the executrix's assistance to and care for the testator, and allowing her complete discretion in settling the estate. Read as a whole, the will in *Stewart* clearly evinced the testator's intent to reward the executrix for her services to him during his lifetime, an intent which would be furthered by interpretation of the disputed language as creating a power of appointment. No such intent on the part of the instant testatrix has been shown by Fox.

Although it is true, as Fox contends, that we must construe the will where possible in order to avoid intestacy, we may not do so by ignoring the testatrix's intent or by ascribing to her an intent which is nowhere evidenced in the will. Accordingly, we agree with the trial court that the residuary clause in this case may not properly be interpreted as creating a general power of appointment in Fox, but only to empower Fox to distribute assets in a manner agreed upon between Fox and the testatrix. Because no such agreement has been produced or probated, we must agree with the trial court that the residuary clause in this case did not effectively dispose of the residue and therefore resulted in a partial intestacy.

Fox's third argument is that the trial court erred in limiting attorney's fees for the estate to an arbitrary percentage of the value of the estate. He argues that the court's reduction of his attorney's fees by $8500 has denied his attorney reasonable and just compensation for services to the estate.

It is well established that the responsibility for determining the amount of counsel fees rests primarily with the auditing judge. *Estate of McClatchy,* 492 Pa. 352, 424 A.2d 1227 (1981) (citing *Thompson Estate,* 426 Pa. 270, 281–82, 232 A.2d 625, 631 (1967)). "The amount of fees to be allowed to counsel, always a subject of delicacy if not difficulty, is one peculiarly within the discretion of the court of first instance. Its opportunities of judging the exact amount of labor, skill and responsibility involved, as well as its knowledge of the rate of professional compensation usual at the time and place, are necessarily greater than ours, and its judgment should not be interfered with except for plain error...." *Good's Estate,* 150 Pa. 307, 310, 24 A. 623, *quoted in Estate of McClatchy, supra.* "[T]he allowance or disallowance of counsel fees rests generally in the judgment of the court of the first instance and its decision will not be interfered with except for palpable error." *Rambo's Estate,* 327 Pa. 258, 266, 193 A. 1, 4 (1937), *quoted in Estate of McClatchy, supra.*

Fox contends that the auditor's recommended reduction of his attorney's fees, adopted by the trial court, was

based upon the application of an arbitrary formula rather than a determination of fair and reasonable fees. The auditor's report, however, does not support this contention, nor does the trial court's opinion. Rather, it appears that the fact that the fees charged against the estate in Fox's accounting amounted to approximately 30% of the estate acted as a red flag to the auditor and the trial court which, coupled with the exception filed by Splain on this issue, caused a closer scrutiny of the reported fees and the services upon which they were based. In undertaking this more detailed review of the attorney's services and bills, the auditor properly considered the amount of work performed, the character of the services rendered, the difficulty of the problems encountered, the value of the property in question, the degree of responsibility involved, the professional skill of the individuals rendering the services, the standing of the attorney in her profession, and the ability of the estate to pay a reasonable fee. *See LaRocca Estate,* 431 Pa. 542, 246 A.2d 337 (1968). The amount of the surcharge imposed does not reflect the application of any formula; rather, it resulted from consideration of the factors outlined above.

Although the auditor did not make detailed findings in connection with his recommendation of surcharge, the record indicates that the fees paid to Fox's attorney included payment for services rendered to Fox in his failed attempt to secure the residue of the estate for himself. Such services did not benefit the estate, and fees paid as a result are not properly charged to the estate. *See Faust Estate,* 364 Pa. 529, 73 A.2d 369 (1950). Moreover, the record indicates that the estate was charged at the hourly rate agreed upon for attorneys for services which were ministerial, not legal, and were in fact performed by non-lawyers. In light of this evidence of record, we cannot say that the decision to reduce the attorney's fees claimed by Fox was an abuse of discretion. The record indicates that in the absence of Fox's claim to the residue of the estate this would have been a routine estate administration which did not involve any unusually complicated or extraordinary legal services justifying additional compensation to the estate's attorney. Accordingly, we must

conclude that it was proper to determine the appropriate surcharge by reducing the attorney's fees to a level typical for estates of similar size in Columbia County. The $8500 surcharge for excessive attorney's fees is therefore affirmed.[3]

Fox's fourth claim is that the trial judge erred in refusing to recuse himself because the judge's law clerk had, in previous employment, originated Splain's claims against the estate and because the judge had previously been a law partner of Splain's current counsel. This claim is meritless. Fox does not allege that the trial judge was a partner in the law firm which represented Splain during the time that the firm handled this matter, nor does he allege that the law clerk who *was* associated with the firm during that period had any control over the decision of this case. Moreover, because this case was initially decided by an auditor whose findings were merely confirmed by the trial court, any appearance of impropriety was minimized.[4] Most importantly, we have carefully reviewed the record of the audit hearing and we find no evidence of bias or prejudice in the conduct of that hearing. Because we find that Fox received a full and fair hearing and that the decision of the trial court was amply supported by the law and the evidence of record, we conclude that the court's refusal to recuse itself, assuming *arguendo* that such refusal was erroneous, was harmless.

Fox's fifth claim is that the trial court erred in refusing to disqualify Splain's counsel. Fox sought such disqualification because one of Splain's lawyers acted both as an advocate during the majority of the audit hearing and as a witness on issues regarding the nature and value of legal services rendered both on behalf of Splain and on behalf of

3. Fox also claims that the auditor's report was not based upon a review of the transcript of the audit hearing. We find this immaterial. The auditor was authorized to make his decision based on his recollection of the hearing if he did not feel a need to refresh that recollection by a review of the transcript. Moreover, since none of the auditor's findings is contradicted by the transcript, we cannot perceive how his decision not to wait for a transcript before filing his report has prejudiced Fox.

4. Fox raised no objection to the appointment of the auditor by Judge Keller, the judge whose recusal he later sought.

Fox and the estate. Fox contends that this conduct violated Rule of Professional Conduct 3.7. Even assuming that this is so, Fox has not alleged how this violation prejudiced him. The testimony offered by Splain's counsel was in the nature of expert testimony on the value of services rendered to an estate and the legal and billing practices of the Columbia County legal community in connection with estates. He did not offer fact testimony which Fox would be unable to counter. Fox was free to offer expert testimony on his own behalf and did not do so, nor, if he was surprised by the testimony of Splain's counsel, did he ask for a continuance in order to obtain and prepare an expert witness of his own. In the absence of any allegation of prejudice resulting from the alleged ethical violation, we find no basis to disturb the findings of the auditor and the trial court. Fox's remedy for any misconduct which occurred lies in disciplinary proceedings.

Fox's sixth claim is that the trial court erred in ordering Splain's counsel fees to be paid from the estate. We find no merit in this claim. The services rendered by Splain's attorney resulted in the recovery of a significant sum for the estate by successfully seeking to surcharge Fox. We find no abuse of discretion in the decision of the court to pay the counsel fees from estate funds. *See Estate of Vaughn,* 315 Pa.Super. 354, 461 A.2d 1318 (1983).

Fox's final claim is that the trial court erred in surcharging him for delaying investment of the estate assets in an interest-bearing account. He contends that his delay was reasonable because he believed that the estate would be settled quickly and therefore that the cost of preparing a fiduciary income tax return would exceed the interest earned on the estate account prior to distribution. "It is hornbook law that '[a fiduciary] is required to use such common skill, prudence and caution as a prudent man, under similar circumstances, would exercise in the management of his own estate; and if he negligently causes a loss to an estate he may properly be surcharged for the amount of such loss.' *In Re*

*Estate of Ellis,* 460 Pa. 281, 288, 333 A.2d 728, 732 (1975) (quoting *Denlinger Estate,* 449 Pa. 393, 396, 297 A.2d 478, 480 (1972)). *See also In Re Estate of Gordon,* 354 Pa.Super. 274, 278, 511 A.2d 869, 871 (1986). Fox concedes that he was aware as early as April, 1993, that Splain intended to make a claim against the estate as an intestate heir and that he nevertheless held the estate funds in a non-interest-bearing account until approximately two years later. Given these facts, we cannot conclude that the trial court abused its discretion in finding that Fox failed to exercise ordinary prudence in handling the estate assets and that he should be surcharged at a nominal interest rate for this failure.

Because Fox has failed to demonstrate any instance in which the trial court abused its discretion, we affirm its final decree.

Decree affirmed.