## In re Estate of Abdoe

C.P. of Lawrence County, no. 10054 of 1997, O.C.A.

*Lawrence M. Kelly,* for petitioner.
*David E. Henderson,* for respondent.

MOTTO, *J.,* December 21, 1999—This case is before the court on exceptions to a duly-filed master's report. Exceptions were initially filed by Omar Abdoe, petitioner, to the estate's first and final account and proposed decree of distribution. A master was appointed, and after a hearing, he filed his report. The report makes recommendations to the court regarding executor and counsel fees, and distribution of the decedent's property.

The petitioner excepts to executor and attorney fees as determined in the master's report. The petitioner also objects to the distribution of decedent's personal property, and the manner in which the stock holdings were distributed. All exceptions are now properly before the court for disposition.

Findings and conclusions of a master may only be set aside by trial court upon finding an error in applying the law to the facts, or failure by the master to fully consider all matters required to be heard. *In re Sweeney,* 695 A.2d 426, 428 (Pa. Super. 1997). Upon the trial judge's review, the trial court has the power to accept or reject the master's report and recommendations in whole or in part. *Id.* The role of the orphans' court judge in reviewing a master's report is similar to a review by a judge of the findings of a jury. *Krepinevich Estate,* 433 Pa. 78, 248 A.2d 844 (1969). With this standard in mind, the following is a discussion and disposition of all exceptions.

According to the master's report, the decedent, Al S. Abdoe died testate on June 1, 1990. Julie Abdoe, decedent's sister, executrix, was named executor in the will. The will, dated January 25, 1991, bequeathed all tan-

gible personal property and residue to the decedent's children, the petitioner, Martha Jo Jensen, and Greg Abdoe, in equal shares. The decedent's home was devised to the executrix. To help her administer the estate, the executrix retained the assistance of Attorney S. Sanford Kantz.

## I. EXECUTOR FEES

The petitioner's first exception to the master's report is that the executor's fee is excessive. In the report, the master recommends that the executrix be paid $16,500.[1] The court disagrees with the petitioner, and adopts the master's facts and legal conclusions as set forth in the report.

Section 3537 of the Pennsylvania Probate, Estates and Fiduciaries Code sets forth the standard the court must use in establishing compensation for executors. Section 3537 states as follows:

"The court shall allow such compensation to the personal representative as shall in the circumstances be reasonable, and just, and may calculate such compensation on a graduated percentage." 20 Pa.C.S. §3537.

An executor is entitled to reasonable and just compensation for the services he/she provides. *In re Estate of Sonovick,* 373 Pa. Super. 396, 541 A.2d 374 (1988). The basis for determining whether compensation is reasonable depends upon the value of the services actually rendered, and not upon some arbitrary formula. *In re*

---

1. The executrix submitted an inheritance tax return which first calculated her fee at $24,400. The fee was computed on a flat 5 percent calculation of the gross estate.

*Estate of Geniviva,* 450 Pa. Super. 54, 675 A.2d 306 (1996), *alloc. denied,* 546 Pa. 666, 685 A.2d 545 (1996); *In re Estate of Rees,* 425 Pa. Super. 490, 625 A.2d 1203 (1993); see *In re Estate of Breyer,* 475 Pa. 108, 119, 379 A.2d 1305, 1311 (1977). While, as a matter of convenience, compensation of a fiduciary may be arrived at by way of a percentage, the true test is always what the services were actually worth and to award a fair and just compensation thereof. *Estate of Rees* at 497, 625 A.2d at 1206. "[E]xecutors seeking compensation from an estate have the burden of establishing facts which show the reasonableness of their fees and entitlement to the compensation claimed." *Estate of Rees* at 497, 625 A.2d at 1206. The determination of whether the executor's fees are reasonable is left to the sound discretion of the orphans' court, and the Superior Court will not disturb the orphans' court determination absent a clear error or an abuse of discretion. *Id.* The orphans' court also has the authority to reduce to a "reasonable and just" level those fees and commissions claimed by the fiduciary. *Id.*

Here, the executrix presented both testimonial and written evidence of the services she provided to the estate of the decedent. The executrix met with Attorney Kantz regularly and often. She dropped off mail at Attorney Kantz's office and frequently met with him to sign documents and to discuss the estate. The executrix also performed the general executor duties such as being sworn in, obtaining death certificates, transferring the decedent's titles to property, and overseeing the disposition of the decedent's property to the beneficiaries.

A long and detailed log was presented to the master by the executrix. The log describes in detail each of the executrix's activities and the dates she performed them.

The court notes that although the executrix's duties were not difficult, the executrix had to perform her duties with great care and diligence because the value of the estate was significant, and the executrix was responsible for handling a substantial quantity of mail and documents. If the executrix had not performed her duties in a careful manner, she could have disturbed the efficient administration of the estate.

For the reasons listed above, as well as those stated in the master's report, the court agrees with the executor fee recommendation made by the master. The executrix has proven that a fee of $16,500 is a reasonable and just fee. Therefore, the petitioner's first exception regarding the executor's fee is denied.

## II. ATTORNEY FEES

Petitioner next argues the attorney fee of $24,400, as recommended by the master, is excessive. The court is bound to agree.

In the case sub judice, Attorney Kantz originally set his fee at $24,440 based on a flat 5 percent calculation of the gross probate estate. In response to the petitioner excepting to the fee, Attorney Kantz prepared an itemized bill setting forth the hours he worked on the estate. The itemized bill indicates Attorney Kantz expended a total of 135.5 hours. Attorney Kantz charged $150 per hour for a total of $20,325. Attorney Kantz was paid $15,000 by the estate for his services. The amount of $6,187 of that money was paid to Attorney David E. Henderson for his services in administering the estate. Attorney Henderson's fee is not contested.

Attorney fees in an estate are to be based on the reasonable value of the service actually rendered. *Estate of*

*Rees* at 497, 656 A.2d at 1206; *Dorsett v. Hughes,* 53 Pa. Super. 129, 509 A.2d 369 (1986). Attorneys seeking compensation from an estate have the burden of establishing facts which show the reasonableness of their fees and entitlement to the compensation claimed. *Estate of Sonovick* at 400, 541 A.2d at 376 (1988). The court has the authority to reduce to a "reasonable and just" level those fees and commissions claimed by counsel. *Id.* at 399, 541 A.2d at 376. The test for determining the appropriateness of a fee for legal services in an estate is reasonableness. *Dorsett,* 353 Pa. Super. 129, 509 A.2d 369. Primarily, the responsibility for passing upon the reasonableness of counsel fees rests with the auditing judge. *Thompson Estate,* 426 Pa. 270, 232 A.2d 625 (1967).

In *In re Estate of Preston,* 385 Pa. Super. 48, 560 A.2d 160 (1989), an attorney and executor calculated their fees based on a fixed fee schedule.[2] The court found the use of the schedule for the purpose of setting fees was clearly proscribed. Compensation for the administration of an estate cannot be awarded based simply upon a percentage basis. *Id.* An inquiry must be made by the orphans' court into the reasonableness of fees and commissions disbursed. The court ultimately held that egregious error is committed when a court awards commissions and fees simply on a percentage basis without inquiry into the reasonableness of the compensation. *Id.*

In the instant case, the master correctly found, in accordance with *Estate of Preston,* that Attorney Kantz's bill based upon the 5 percent flat fixed fee was improper.

---

2. The schedule used by the attorney and executor in arriving at fees was that recommended by the attorney general's office.

The proper method to be employed by the court to calculate attorney fees in an estate case is to determine the reasonable value of the services actually rendered. *Estate of Rees* at 497, 656 A.2d at 1206.

The issue of what is a fair and reasonable attorney fee in an estate case can sometimes be a delicate and difficult question. The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed, the character of the services rendered, the difficulty of problems encountered, the importance of the litigation, the value of the property in question, the degree of responsibility involved, whether the fund involved was "created" by the attorney, the professional skill of the attorney rendering services, the standing of the attorney in her profession, the results the attorney was able to obtain, and the ability of the estate to pay a reasonable fee. *LaRocca Estate,* 431 Pa. 542, 246 A.2d 337 (1968). See *Estate of Bruner,* 456 Pa. Super. 705, 691 A.2d 530 (1997); *In re Estate of Burch,* 402 Pa. Super. 314, 586 A.2d 986 (1991).

Here, the facts contained within the record indicate that the type of work performed by Attorney Kantz was basically administrative in nature. Attorney Kantz was required to identify stocks owned by the decedent at the time of his death. It was Attorney Kantz's duty to either locate the stock certificates or prepare forms necessary to replace the stock certificates. There were a total of 10 lost stock certificates.

According to his itemized bill, Attorney Kantz prepared letters testamentary, spoke to the executrix on the telephone, checked and reviewed documents, met with a stockbroker, and performed the general services of an

attorney retained to help administer an estate. Attorney Kantz wrote letters to the petitioner's attorney, and met with the petitioner and executrix on numerous occasions as well.

Although the value of the estate is significant, $488,805.45, it was not complicated or procedurally involved. The only real difficulty encountered in the case was that some of the decedent's stock certificates owned by the decedent at the time of his death were lost. Attorney Kantz had to determine which stock certificates were missing and then he had to replace them. In order to replace the stock certificates, Attorney Kantz was required to fill out a basic application to send to the corporation along with some informational documents. No fund was created by Attorney Kantz, and he was aided by the executrix in administering the estate.

The master suggests that the behavior of the petitioner in the administration of the estate is a significant factor in setting the attorneys' fee. The court does not agree.

After a close reading of the testimony at the master's hearing and a detailed review of the record, the court cannot agree with the master that the acts of the petitioner provides strong justification for the attorney's fee. The petitioner contacted Attorney Kantz often and was a bit intrusive into the details of the estate administration. On two occasions, the petitioner told Attorney Kantz that he would attempt to locate the missing stock certificates, and both times the petitioner delayed in informing Attorney Kantz regarding the results of the search.

The court notes that the petitioner's acts did not substantially interfere with the administration of the estate. The petitioner's intrusiveness is best characterized as that of a beneficiary son concerned over the administration

of his father's estate. An attorney must many times come into contact and deal with the children and beneficiaries of a decedent on whose estate he works. As a result, the court will not give as great weight to the petitioner's behavior as the master did in setting the attorney's fee.

A fee based upon an itemized bill is not in and of itself necessarily proper. It is questionable to automatically assume a lawyer's efforts and time are always worth his hourly rate. *Estate of Burch* at 318-19, 586 A.2d at 988. In *Homer Trust,* 10 Fiduciary Rep.2d 382, 383 (O.C. Chester Cty. 1990), the court stated: "[I]t has long been recognized that time alone does not measure the value of services, nor hourly rate the quality." The determination of reasonable compensation to an attorney for an estate is not relegated to a clock and computer. *Estate of Burch* at 318-19, 586 A.2d at 988. The time expended does not replace the test of reasonableness, and while time involved is a factor in setting a fair and reasonable fee, it is only one of several factors set forth in *LaRocca.*

Attorney Kantz is a skilled lawyer of good standing in the community, but the court cannot justify a $150 per hour bill for Attorney Kantz's services, especially in light of the nature of the work he performed. It is of significance that Attorney Kantz did not prepare the inheritance tax return, nor did he prepare the final account and audit. Those services were performed by Attorney Henderson. Attorney Kantz's duty was primarily to determine and/or replace the decedent's stock certificates.

In performing his duty, Attorney Kantz charged the estate first for $24,400 based on the 5 percent flat fee calculation. Attorney Kantz then charged the estate for 135.5 hours at $150 in lieu of the $24,400 amount. In his itemized bill, Attorney Kantz charged the estate 30.5

hours at $150 per hour solely to determine the stocks and investments held by the decedent at the time of his death. Attorney Kantz then logged 23 hours at $150 per hour to prepare the forms to replace the stock certificates. As for telephone calls, Attorney Kantz charged the estate $3,712.50 for an indeterminable number of telephone calls to the executrix which the executrix herself testified usually lasted "a couple of minutes."

Attorney Kantz's bill did not state the charges with particularity. Instead, many hours appearing on the bill are grouped together. For example, Attorney Kantz has charged the estate for nine hours for "misc. calls with client for 1996" and for five hours at $150 for "misc. calls with client for 1997."

In consideration of the foregoing factors, especially that most of the work performed by Attorney Kantz was principally administrative in nature, the court cannot justify an hourly rate of $150 per hour; rather, the court finds that the reasonable services provided by Attorney Kantz are valued at $100 per hour. Attorney Kantz expended 135.5 hours administering the estate. Therefore, Attorney Kantz is entitled to attorney fees in the amount of $13,550.

Attorney Henderson's payment of $6,187 is uncontested and must be paid by the estate. The total attorney fees due, therefore, are the amount that Attorney Kantz is entitled ($13,550) plus Attorney Henderson's payment ($6,187), equaling $19,737.

## III. DISTRIBUTION IN KIND

The petitioner next argues that he has the right to accept in kind any stocks which are included in the estate so long as there is no objection from the other benefici-

aries. The court cannot agree and adopts the conclusions and recommendations of the master.

The petitioner, during the course of the administration of the estate, requested AT&T and Lucent stocks in kind. However, the executrix had sold the stocks for distribution to the beneficiaries.

Article Four of the decedent's will states as follows:

"In addition to the power conferred by law, my executor shall have the *discretionary power* to retain for distribution in kind, without duty of diversification, all property owned by me at my death, or *to sell any part of such property, upon such terms as my executor shall deem advisable . . . ."* (emphasis added)

A plain reading of the decedent's will shows that it was the decedent's intent to give the executrix the power to liquidate the stocks and distribute the proceeds. The executrix had no duty to retain the assets for distribution in kind. Petitioner cites no law in his brief supporting his contention that he be entitled to an in-kind distribution of the stock certificates, and the court is not persuaded by his argument.

In conclusion, the petitioner did not show cause for the court to order the stock be distributed in kind. The master's factual and legal findings are adopted, and the petitioner's exception is denied.

## IV. DISPOSITION OF PERSONAL PROPERTY

For his final exception, the petitioner argues that the executrix did not properly dispose of the decedent's personal property. The court does not agree, and adopts the factual and legal findings as set forth in the master's report.

In his will, the decedent leaves all tangible personal property to his surviving children to be divided amongst them as they may agree, or in the absence of such agreement, as the executrix shall determine. The record indicates that much of the decedent's personal property was left inside his residence, to which the executrix had a key. The executrix allowed each of the decedent's three children to enter the residence and retrieve personal property as they chose. After the children went to the residence on numerous occasions to take the decedent's personal property, few items remained. The remaining items all had either a de minimis value or no value at all, and the executrix donated the items to charity.

An executor, as a fiduciary of the estate, "is required to use such common skill, prudence and caution as a prudent man, under similar circumstances, would exercise in connection with the management of his own estate." *Lohm Estate*, 440 Pa. 268, 273, 269 A.2d 451, 454 (1970).

Although the executrix could have been more careful in itemizing the property and controlling entry into the residence, her actions were understandable. The beneficiaries were children of the decedent, and the beneficiaries' aunt, the executrix, was the decedent's sister. As an aunt, to not permit the decedent's own children into the house of their father would certainly have caused unnecessary family discord. Once the beneficiaries all had ample opportunity to take whichever property they chose from the residence, the executrix could assume that the few, valueless items remaining were not wanted by the beneficiaries and were abandoned.

In conclusion, the court adopts the findings of fact and law made by the master. The items left in the home by

the children were abandoned and had no value. The executrix exercised the skill and prudence that a common person would have used under similar circumstances. Therefore, the petitioner's exception is denied.

## ORDER

And now, December 21, 1999, exceptions to the supplemental master's estate hearing report having been filed and argued, after consideration of the argument of counsel and briefs filed on behalf of the parties, it is ordered, adjudged and decreed as follows:

(1) Petitioner's exception 1 regarding the executor's fee is denied. The total fee of the executrix, Julie Abdoe, is fixed at $16,500.

(2) Exception 2 regarding attorneys' fees is granted in part. The attorney fee of Attorney S. Sanford Kantz is fixed at $13,550 for services he provided to the estate. The fee of Attorney David E. Henderson is fixed at $6,187. Total attorney fees in the case are therefore fixed at $19,737.

(3) Exception 3 is denied. The executrix's disposition of the personal property of the decedent was proper. The remaining items of decedent's personal property not taken from his residence by the beneficiaries had no value and was abandoned.

(4) Exception 4 is denied. The beneficiaries have no right to an in-kind distribution of the decedent's stock.

(5) The first and final account and proposed decree of distribution of the executrix, as modified by the terms of this order, are hereby confirmed absolutely, and distribution shall be made in such manner as to conform with the account and modifications contained herein.