J-A35042-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF MARIA C. SPEZIALE, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: CONCETTA CITRANO, MICHELE SPEZIALE, MARIA DISPENZA AND ROSE PADORMO, | |
| Appellants | No. 492 WDA 2014 |

Appeal from the Order Dated February 25, 2014
In the Court of Common Pleas of Cambria County
Orphans' Court at No(s): 11-08-00290

BEFORE:  BENDER, P.J.E., BOWES, and ALLEN, JJ.

MEMORANDUM BY BOWES, J.:                          **FILED MARCH 09, 2015**

On appeal, Concetta Citrano ("Ms. Citrano"), Michele Speziale, Maria Dispenza and Rose Padormo (collectively "Appellants") challenge the orphans' court's refusal to surcharge the executor of the estate of Maria C. Speziale, deceased, (the "Estate").  We affirm.

Mrs. Speziale, a widow, died testate on March 25, 2008.  On April 4, 2009, her will was probated and letters testamentary were issued to Norman Verhovsek and Rosalie Vernovsek.  Mr. Verhovsek subsequently became sole executor of the estate.  Ms. Speziale left her estate to nieces, nephews, spouses of her deceased siblings, and a cousin.  Appellants are four of twelve people entitled to receive a portion of her estate.

Mrs. Speziale had sizeable assets with an investment advisor, Edward Stetz, who worked on behalf of AIG Financial Advisors ("AIG"). Before Mrs. Speziale died, Ms. Citrano, decedent's sister-in-law, started to suspect that Stetz was stealing assets belonging to the decedent. Ms. Citrano initiated an investigation and filed a complaint against Stetz with the Pennsylvania Securities and Exchange Commission, which merged with the Pennsylvania Department of Banking and Securities effective October 1, 2012 (the "Commission"). Expenses and attorney's fees were expended in connection with that pursuit.

After Mrs. Speziale died, the First and Final Account was filed and listed probate assets of approximately $225,000. The record indicates that, in addition to these probate assets, the beneficiaries received non-probate assets. Those non-probate assets consisted of annuities issued under various life insurance policies and amounted to approximately $900,000. These annuities were part of decedent's investment portfolio with AIG.

Exceptions were filed to the First and Final account, and a settlement agreement was reached. The settlement agreement was outlined in a consent decree entered on October 26, 2009. The decree provided in pertinent part:

> 4. The parties recognize that Concetta Citrano brought to light various concerns regarding the investments of the decedent and the conduct of the decedent's investment advisor and, further, that those concerns necessitated her retaining the assistance of counsel and ultimately she filed formal complaints with the Pennsylvania Securities Commission (hereinafter the

"Commission) and with the Pennsylvania Insurance Department with regard to those concerns. Additionally, through counsel, Concetta Citrano continued an independent investigation and obtained voluminous documentation pertaining to the decedent's finances, all of which has or will be made available to the Commission.

5. The parties recognize that the continued expenses of the independent investigation conducted by and on behalf of Concetta Citrano make it impractical to continue such investigation. Further, as a result of the investigation conducted in response to the complaints filed by Concetta Citrano, the parties expect that disciplinary action has or will be taken by the Commission against the decedent's investment advisor and his principals. As a result of such disciplinary action **it is possible that the Estate will obtain financial reimbursement for the actions of the decedent's investment advisor. The parties understand and agree that any such reimbursement to the Estate will now result from the continued action of the Commission** and the parties will continue to cooperate with the Commission's efforts in that regard. The parties also understand and agree that the amount of any such reimbursement is speculative; that the Estate lacks sufficient assets with which to independently pursue litigation against persons or entities that may be potentially liable to the Estate with regard to the decedent's finances; and that it is unfair and impractical to require Concetta Citrano to individually bear the continued costs associated with such litigation.

6. **In the event any recovery is obtained on behalf of the Estate by the Commission**, it is agreed that before any distribution to any heir is made, Concetta Citrano will be reimbursed for all of the costs and expenses she has incurred in connection with her concerns regarding the investments of the decedent and the conduct of the decedent's investment advisor which, as-of the date hereof, are approximately $32,000.00, and that **D.C. Nokes, Jr., Esq., shall be paid the sum of $4,300.00 from any recovery obtained by the Commission on behalf of the Estate** prior to any distribution to any heir, said sum representing additional attorney's fees and costs incurred in responding to the investigation initiated by Concetta Citrano. These fees approved include services rendered by counsel up to and including proceedings before this court this date.

. . . .

10. **If assets are recovered by the Estate** either as a result of the [property potentially owned by the decedent in Italy] or **as a result of the actions currently before the Pennsylvania Securities and Exchange Commission, the Estate shall file a supplemental accounting** and [the estate's attorney] shall be justified in charging additional fees for such efforts as he expends in those matters. Any fees incurred by any heir shall not be reimbursed from proceeds of these two or other assets that may be collected by the Estate.

Decree, 10/26/09, at 1-3 (emphases added).

The Commission launched an investigation into Stetz's activities. As a result, on August 19, 2011, the Commission entered into a settlement agreement with AIG and SagePoint Financial, Inc. ("SagePoint") and the Commission agreed to release those entities in exchange for their payment of $551,693.00 to the Estate. In accordance with the consent decree, the executor filed a Second and Final Account seeking distribution of the $551,693.

Appellants filed exceptions to the accounting. While there were other exceptions, the pertinent ones herein relate to Appellants' objection to the amount of attorney's fees paid to the estate attorney and their demand that the executor be surcharged because he improperly treated the Commission's recovery on behalf of the estate from AIG/SagePoint as an estate asset. Appellants averred that the recovery from AIG/SagePoint should have been treated as an annuity, a non-probate asset. Appellants maintained that, as a result of this incorrect characterization of the recovery secured by the

Commission, the executor incurred increased inheritance taxes and probate-related expenses.

The orphans' court held hearings on the matter. L. Scott Mensch of the Commission investigated the matter on behalf of the Estate, and he negotiated the settlement with AIG/SagePoint. He testified that, when the settlement was reached, all the annuities owned by decedent were no longer in existence. Mr. Mensch explained that the amount recovered from AIG/SagePoint represented losses incurred due to Stetz's activities while Mrs. Speziale was alive. The $551,593 consisted of reimbursement for money stolen from the decedent's account by Stetz as well as investment losses incurred when Stetz terminated annuities and purchased others to obtain a commission. N.T. Estate Objections (Testimony of L. Scott Mensch), 1/3/13, at 19.

Gerald P. Neugebauer, Jr., who is both a lawyer and a certified public accountant, was appointed master and mediator. Under the order appointing him, Mr. Neugebauer was directed to meet with counsel for the parties and assess the merits of all exceptions to the Second and Final Account. Relevant herein is Mr. Neugebauer's conclusion that the settlement from AIG/SagePoint was a probate asset. He opined as follows:

> 1. The $551,693.00 that was received from [AIG and] Sagepoint Financial, Inc., following the extensive efforts of the Pennsylvania Securities Commission, was, in my opinion, well beyond a preponderance of the evidence, an Estate asset, this for the following reasons:

A. [The orphans' court's] DECREE of October 26, 2009 was not appealed and must therefore be given significant weight. [The orphans' court judge] clearly anticipated that, should reimbursement be received through the efforts of the Pennsylvania Securities Commission, such reimbursement would be an Estate asset. Reference is made to excerpts from Paragraphs 3 and 6 of the DECREE, which provide, as follows, verbatim:

> "it is possible that the Estate will obtain financial reimbursement.

> "any such reimbursement to the Estate will now result from the continued action of the Commission.z'

> "In the event any recovery is obtained on behalf of the Estate by the Commission, and D.C. Nokes, Jr., Esquire shall be paid the sum of $4,300.00 from any recovery obtained by the Commission on behalf of the Estate.".

[The] DECREE does not suggest that any heir of the Estate would be entitled to any reimbursement in his or her own right.

B. The Pennsylvania Securities Commission summary (Respondent's Exhibit 22), although mentioning numerous annuities, were all to the effect that Samuel Speziale (husband of Maria C. Speziale who predeceased his wife) and Maria C. Speziale, the Decedent herein, were defrauded out of funds by Edward F. Stetz, Jr. before the death of Maria C. Speziale on March 25, 2008. Allegations numbered 22 through 369 in that summary were entitled Sales Activity in the Brokerage Account of S.S. and M.S. from 1995 through 2006 and allegations numbered 370 through 402 in that summary were labeled Fees Paid to IHA from the

Brokerage Account of S.S. and M.S. from 1998 through 2006. There were no allegations in the summary that Mr. Stetz defrauded either Mr. Speziale or Mrs. Speziale after the death of Mrs. Speziale in March of 2008.

C. The detail of the losses prepared by the Pennsylvania Securities Commission (Petitioner's Exhibit 9) was entitled SPEZIALE ESTATE LOSSES and the bottom line thereon was labeled 'Total Losses to Speziale Estate $607,061.23.'

D. The September 14, 2011 check in payment of the $551,693.00 from Sagepoint Financial, Inc. was made payable to the order of "Estate of Maria Speziale, c/o D.C. Nokes, Jr. Law Office." Subsequently, the Form 1099-MISC issued by Sagepoint Financial, Inc. for 2011 was issued in the name of the "Estate of Maria Speziale, c/o D.C. Nokes, Jr. Law Office."

E. Had Mrs. Speziale been alive at the time of the completion of the investigation by the Pennsylvania Securities Commission, or later, at the time of the issuance of the check from Sagepoint Financial, Inc., she would have been entitled to the receipt of all of the funds of which her predeceased husband and herself were defrauded.

F. The argument that the beneficiaries of the annuities used in the defrauding process should have received the Funds generated by the efforts of the Pennsylvania Securities Commission ignores the fact that each annuity had to be cashed in as part of the defrauding process. Once cashed in, and another annuity purchased from the proceeds of the cashed annuity, Mr. and Mrs. Speziale, or just Mrs. Speziale following her husband's decease, were defrauded and not any named beneficiaries of annuities that had been cashed. A beneficiary of any annuity in question would receive vested rights in that annuity only if that annuity was in existence at the time of the death of Mrs. Speziale.

Letter from Gerald P. Neugebauer, Jr., 12/30/13. Mr. Neugebauer resolved other exceptions but declined to render an opinion on the reasonableness of the attorney's fees paid to the estate attorney.

The orphans' court thereafter adopted the master's finding that the AIG/SagePoint settlement was a probate asset and rejected Appellants' request for a surcharge. By order dated February 25, 2004, it approved the Second and Final Account and the attorney's fees outlined therein. This appeal followed. Appellants raise these contentions on appeal:

> 1. Whether the Court committed an error of law in holding that the proceeds of the Pennsylvania Securities Commission investigation should be characterized as a probate asset?
>
> 2. Whether the Court committed an error of law in basing its decision on confidential communications and/or facts not of record?
>
> 3. Whether the Court committed an error of law in failing to surcharge the fiduciaries for the damages and losses suffered by Appellants as the result of the mischaracterization of assets, improperly prepared taxes, and unjustified fees and commissions charged to the Estate?

Appellant's brief at 7.

Initially, we outline the applicable standard of review:

> Our standard of review of the findings of an Orphans' Court is deferential.
>
> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on

> review, we will not reverse its credibility determinations absent an abuse of that discretion.
>
> However, we are not constrained to give the same deference to any resulting legal conclusions.
>
> *In re Estate of Harrison,* 745 A.2d 676, 678–79 (Pa.Super. 2000), *appeal denied,* 563 Pa. 646, 758 A.2d 1200 (2000). "The Orphans' Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Luongo,* 823 A.2d 942, 951 (Pa.Super. 2003), *appeal denied,* 577 Pa. 722, 847 A.2d 1287 (2003).

*In re Fiedler*, 2015 WL 224008, 4-5 (Pa.Super. 2015) (quoting *In re Estate of Whitley*, 50 A.3d 203, 206-07 (Pa.Super. 2012)).

Appellants first aver that the orphans' court improperly determined that the settlement from AIG/SagePoint was a probate asset. A non-probate asset is one that passes to beneficiaries independently of the dictates of the decedent's will or intestate laws, whichever is applicable. The asset is considered "non-probate" since its distribution is made pursuant to the document that governs it. An annuity is not a probate asset, unless it is payable to the estate, since it passes directly to the named beneficiaries under the terms of the insurance policy.

Appellants' position on appeal is that the recovery from AIG/SagePoint is an annuity. They rely upon testimony from Thomas S. Seitz, whom they incorrectly characterize as the executor's "own expert." Appellants' brief at 14. Mr. Seitz was the accountant who prepared the estate's income tax return. In the portion of the record that Appellants cite, Mr. Seitz stated that he would view an annuity as a non-probate asset, that annuity

payments are reported to the Internal Revenue Service on a Form known as a 1099-R, and that he would have asked AIG/SagePoint to change the 1099-Misc issued to the estate for the $551,693 to a 1099-R if that amount represented payment of an annuity. Appellants represent that Mr. Seitz said that he "would not have classified the AIG theft losses as a probate asset." Appellants' brief at 15. This representation is simply incorrect. Mr. Seitz spoke in general terms and never offered an opinion that the money paid by AIG/SagePoint was an annuity rather than a probate asset. *See* Reproduced Record at 21a, upon which Appellants exclusively rely for this position.

Appellants ignore that there were no annuities in existence when the AIG/SagePoint settlement was negotiated. As Mr. Neugebauer cogently analyzed, the settlement amounts were owed by AIG/SagePoint directly to Mrs. Speziale based upon Stetz's activities while she was still alive. The settlement proceeds of a potential lawsuit are not an annuity, there is no document governing distribution of a settlement, and there are no named beneficiaries of a settlement. Since the amount paid by AIG/SagePoint would have been paid directly to Mrs. Speziale, had she lived, it is clear that it was an estate asset. The fact that Stetz stole the amount recovered from an annuity does not convert the settlement of the potential lawsuit into an annuity.

Appellants' position also rests upon their averment that the $551,693 represented improper fees collected by Stetz from "churning" activities. Churning occurs when an investment agent improperly buys and sells assets

solely to earn a commission rather than to advance his client's financial interests. However, Mr. Mensch reported that the recovery did not simply represent improper commissions earned by Stetz from canceling and then purchasing annuities. The AIG/SagePoint payment also accounted for money actually stolen from the Speziales' account by Stetz. Moreover, regardless of whether the $551,693 represented churning fees earned by Stetz, the undeniable fact in this case is that the money did not represent payment of an annuity. It was a recovery directly from AIG/SagePoint on behalf of a deceased person.

Appellants' first contention not only evidences a fundamental misunderstanding of the law, it is inconsistent with the terms of the consent decree entered on October 26, 2009. As outlined by Mr. Neugebauer, the potential recovery by the Commission for Stetz's activities was continually characterized as a reimbursement to be received by the estate and an estate asset. In addition to the portions of the decree quoted by Mr. Neugebauer, the decree provides that, if the Commission negotiated a settlement, "the Estate shall file a supplemental accounting." Consent Decree, 10/29/09, at 3. If the settlement was not a probate asset, there would have been no need for another accounting. Thus, Appellants' position on appeal must be rejected based upon the terms of the consent decree entered in this matter on October 29, 2009. The orphans' court's ruling that the AIG/SagePoint settlement was a probate asset is unassailable, and we affirm it.

Appellants' second issue relates to the conduct of the proceedings before Mr. Neugebauer. The orphans' court directed that Mr. Neugebauer be appointed mediator and master and meet with opposing counsel. The proceedings were not of record, and both Mr. Neugebauer and the orphans' court considered various documents in rendering their decisions. On appeal, Appellants complain about the appointment of Mr. Neugebauer as mediator and master, the non-record nature of the proceedings, his private meetings with the attorneys, and the consideration of various documents by Mr. Neugebauer and the orphans' court. However, Appellants failed to raise any objections below either to Mr. Neugebauer's appointment or to the manner in which the mediation was conducted. Likewise, they did not complain about any documents considered during resolution of their exceptions. Hence, Appellants' second contention is waived. Pa.R.A.P. 302 (a) (issues that are not raised during the trial court proceedings are waived for purposes of appeal).

Appellants' final position has two aspects. They first argue that the executor should be surcharged because he improperly treated the recovery secured by the Commission as a probate rather than a non-probate asset and thereby unnecessarily incurred increased fees and taxes to the estate. Second, they complain about the amount of attorney's fees awarded to the estate attorney.

As we have observed, a "[s]urcharge is the penalty for failure to exercise common prudence, common skill and common caution in the

performance of the fiduciary's duty and is imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care." *In re Fiedler*, *supra* * 11 n. 5 (quoting *In re Estate of Bechtel*, 92 A.3d 833, 839 (Pa.Super. 2014)). As to Appellants' first position, if the executor properly treated the $551,693.00 as a probate asset, then he did not fail to exercise common prudence, skill and caution in the performance of his duties. Since we have ruled that the orphan's court correctly held that the Commission's recovery on behalf of the estate was a probate asset, we, concomitantly reject any surcharge position premised upon the executor's correct characterization of the asset in question.

Second, Appellants maintain that the amount of attorney's fees awarded to the estate attorney was excessive. In the Second and Final Account, estate attorney D.C. Nokes, Jr., was awarded attorney's fees of $24,600.00. Of that amount, $4,300 represented his award under the consent decree. After Appellants challenged the amount of attorney's fees, Mr. Nokes provided a fifteen-page document detailing the time that he spent on estate matters from October 26, 2009, to February 25, 2013. He billed at for seven hours and forty-one minutes at $200 per hour and for 111 hours and four minutes at $250 per hour. He accounted for $28,303.34 in actual time spent. The bill did not include work performed after February 25, 2013, which would include the proceeding before Mr. Neugebauer since he was appointed on June 10, 2013.

In its final decree, the orphans' court rejected Appellants' challenge to the amount of fees paid to Mr. Nokes and approved the payment of the $24,600 outlined in the Second and Final Account. In **Estate of McClatchy**, 424 A.2d 1227, 1230 (Pa. 1981) (quoting **Thompson Estate**, 426 Pa. 270, 281-82, 232 A.2d 625, 631 (1967)) (citations and quotation marks omitted), our Supreme Court observed,

> It is a well entrenched rule of law in this State that the responsibility for determining the amount of counsel fees rests primarily with the auditing judge. . . . The amount of fees to be allowed to counsel, always a subject of delicacy if not difficulty, is one peculiarly within the discretion of the court of first instance. Its opportunities of judging the exact amount of labor, skill and responsibility involved, as well as its knowledge of the rate of professional compensation usual at the time and place, are necessarily greater than ours, and its judgment should not be interfered with except for plain error.

In its seminal decision **In re LaRocca's Trust Estate**, 246 A.2d 337, 339 (Pa. 1968) (footnote omitted), the Court held:

> The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

In this case, Appellants allege that the attorney's fees were based upon a percentage of the assets administered by Mr. Nokes in the Second

and Final Account. The record refutes this position. Mr. Nokes presented a detailed bill for time spent and outlined the service provided. Appendix to Case Memorandum In Response to Objections Raised to Second and Final Account, 2/25/13, at Tab 2. On appeal, Appellants do not take issue with one minute of time outlined by Mr. Nokes in that document. Similarly, they did not suggest that he did not perform the described work.

Hence, Appellants do not raise the existence of an abuse of discretion. The awarded fee was supported by the amount of work performed, the hourly rate was reasonable, and the estate had significant assets to pay Mr. Nokes for his services. Hence, we decline to interfere with the considerable discretion accorded the auditing judge in this setting, and its judgment in awarding the attorney's fees in question cannot be characterized as plain error.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2015